1

Patrick M. Howe (SBN 154669)
*pat@patrickhowelaw.com*
PATRICK HOWE LAW, APC
402 W. Broadway, Ste. 1025
San Diego, CA 92101
(619) 398-3422 Phone
(619) 452-2507 Fax

2

3

4

5

6

Attorney for defendant
Progressive Direct Insurance Company

7

8

9

10          UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

12

13   Francisco Marquez,                    Case No.   **'23 CV 0046 DMS AGS**

14                 Plaintiff,
                                           **DECLARATION OF**
15        v.                               **PATRICK HOWE IN**
                                           **SUPPORT OF NOTICE OF**
16                                         **REMOVAL OF ACTION**
     Progressive Direct Insurance Co.;     **UNDER 28 U.S.C. § 1441(b)**
17   Carrie Rockwell; J. Michael           (**DIVERSITY**)
     Hunter; Hunter Consulting &
18   Survey Services, Inc.; and Does 1
     to 50,
19

20                 Defendants.

21

22

23

24

25

26

27

28

_____

HOWE DECL. ISO NOTICE OF REMOVAL

I, Patrick Howe, declare:

1.    I am an attorney at law licensed to practice in California and before this Court. I am counsel of record for defendant Progressive Direct Insurance Company in this case.

2.    I make this declaration in support of Progressive Direct's notice of removal of the below described state court action to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446.

3.    Prior to filing the notice of removal, I reviewed written communications between Progressive Direct and plaintiff Francisco Marquez or his attorneys. The communications concern a reported loss of or damage to plaintiff's boat, a 2006 Seaswirl Striper 2901, and an insurance claim for same that plaintiff made with Progressive Direct.

4.    Exhibit 1 hereto is a true and correct copy of the complaint filed by plaintiff in California Superior Court, for the County of San Diego, in the Central District, located at 330 W. Broadway, San Diego, CA 92101, on October 25, 2022. Progressive Direct first became aware of the state court complaint on December 12, 2022, when it was served with the complaint and a summons.

5.    The amount in controversy in this matter is more than $75,000. According to the communications I have reviewed between Progressive Direct and plaintiff Francisco Marquez or his attorneys, plaintiff contends the loss of or damage to his boat exceeds that amount.

6.    Exhibit 2 hereto is a true and correct copy of Progressive Direct's current corporate Statement of Information on file with the California Secretary of State. Exhibit 2 reflects that Progressive Direct is incorporated in Ohio and has its principal place of business in Ohio.

7.    Exhibit 3 hereto is a true and correct copy of a January 8, 2023 print out of information maintained on the California Department of Insurance's website concerning Progressive Direct. Exhibit 3 reflects that Progressive Direct is incorporated in Ohio and has its principal place of business in Ohio.

8.    Exhibit 4 hereto is a true and correct copy of a January 7, 2022 letter from attorney Edward Walton on behalf of plaintiff to Progressive Direct. This letter is refenced in paragraph 33 of the state court complaint.

9.    I have had communications with lawyers representing defendants J. Michael Hunter and Hunter Consulting & Survey Services, Inc. On behalf of their clients, these lawyers have consented to removal of the state court action to this Court by Progressive Direct. Exhibit 5 hereto is a true and correct copy of the written consent.

10.  I represent defendant Carrie Rockwell. She has not been properly served with the summons and complaint in this case. Additionally, as explained in the notice of removal, her citizenship should not be considered for diversity jurisdiction purposes because she is a sham defendant.

11.   Exhibit 6 hereto is a true and correct copy of all other court documents in the state court action of which Progressive Direct is aware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


January 10, 2023                    PATRICK HOWE LAW, APC

By: */s/Patrick M. Howe*
Patrick M. Howe
Attorney for defendant
Progressive Direct Insurance
Company

TABLE OF CONTENTS FOR EXHIBITS

| Exhibit No. | Page No. |
|---|---|
| Exhibit 1 | 1 |
| Exhibit 2 | 88 |
| Exhibit 3 | 89 |
| Exhibit 4 | 93 |
| Exhibit 5 | 105 |
| Exhibit 6 | 107 |

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/25/2022** at 11:32:13 AM

Clerk of the Superior Court
By Jimmy Siharath, Deputy Clerk

**CHRISTIAN C. HAFFNER (SBN 248962)**
**TIMOTHY T. MORGAN (SBN 280054)**
**HAFFNER & MORGAN LLP**
**2333 FIRST AVENUE, SUITE 200**
**SAN DIEGO, CALIFORNIA 92101**
**P: (619) 541-8787**
**F: (619) 541-8795**

Attorneys for PLAINTIFF, Francisco Marquez

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| FRANCISCO MARQUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>PROGRESSIVE DIRECT INSURANCE CO.; CARRIE ROCKWELL; J. MICHAEL HUNTER; HUNTER CONSULTING & SURVEY SERVICES, INC.; and DOES 1 to 50,<br><br>    Defendants. | Case No. 37-2022-00042849-CU-BC-CTL<br><br>**PLAINTIFF'S COMPLAINT FOR (1) BREACH OF CONTRACT; (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3) INTENTIONAL MISREPRESENTATION; (4) NEGLIGENT MISREPRESENTATION and (5) CONSPIRACY TO COMMIT FRAUD** |

COMES NOW PLAINTIFF, Francisco Marquez, alleging against Defendants as follows:

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION:

1.  Plaintiff, Francisco Marquez, (hereinafter "PLAINTIFF"), is, and at all times mentioned herein was, a resident of the City of San Diego, County of San Diego, State of California.

2.  On information and belief, PLAINTIFF hereon alleges that at all times mentioned herein, Defendant Progressive Direct Insurance Co. (hereinafter "PROGRESSIVE"), was and is an insurance company, operating and doing business in the City of San Diego, San Diego County, State of California.

3.  On information and belief, PLAINTIFF hereon alleges that at all times mentioned herein, Defendant Carrie Rockwell (hereinafter "ROCKWELL"), was and is an individual, residing in the County of Contra Costa, State of California.

Howe Decl., Exhibit 1
Page 001

4. On information and belief, PLAINTIFF hereon alleges that at all times mentioned herein, Defendant J. MICHAEL HUNTER (hereinafter "HUNTER"), was and is an individual, residing in the County of Springfield, State of Missouri.

5. On information and belief, PLAINTIFF hereon alleges that at all times mentioned herein, Defendant Hunter Consulting & Survey Services, Inc. (hereinafter "CONSULTING"), was and is consulting services corporation, operating and doing business in the City of Springfield, State of Missouri.

6. PLAINTIFF is ignorant of the true name and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. PLAINTIFF will amend this Complaint to allege the true names and capacities of said Defendants when they are ascertained.

7. PLAINTIFF believes, and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and PLAINTIFF's injuries and damages as herein alleged are directly, proximately and legally caused by Defendants.

8. PLAINTIFF is informed and believes, and thereon allege, that at all times mentioned herein, each of the Defendants was the agent, servant, representative or employee of each of the remaining Defendants, and was acting with the consent, permission, or approval of each of their Co-Defendants in doing the things alleged herein.

9. PLAINTIFF is informed and believes, and thereon allege, that at all times mentioned herein, PROGRESSIVE was an insurance company, having a principal place of business in Mayfield Village, Ohio, and doing business in the City of San Diego, State of California.

10. This Court is proper, as the contract of insurance between PLAINTIFF and PROGRESSIVE at issue in this suit was commenced in its jurisdictional area, and the acts and omissions contained herein occurred in San Diego, California.

///

///

## FIRST CAUSE OF ACTION

### (Breach of Contract as to PROGRESSIVE and Does 1-10)

11. PLAINTIFF incorporates by reference all preceding paragraphs of this complaint as if fully set forth here, and further alleges as follows:

12. PLAINTIFF was the sole owner of a 2006 Seaswirl Striper 2901 Walkaround boat (hereinafter "Seaswirl"), which had a purchase agreement dated May 2, 2021.

13. Prior to October 11, 2021, PLAINTIFF and PROGRESSIVE entered into a valid, enforceable contract of insurance to provide, amongst other things, coverage against loss due to collision for said Seaswirl under policy number 949320135, with limit set at an agreed value of $95,000 (the "POLICY"). The POLICY documents at all times herein listed the address for PLAINTIFF as 268 Surrey Drive, Bonita, CA 91902. A true and correct copy of the POLICY is attached hereto as Exhibit "A" and incorporated herein by reference.

14. At all times mentioned herein, PLAINTIFF promptly paid his premiums and his policy was in force and effect at all relevant times.

15. In the course of purchasing the Seaswirl from its prior owner, PLAINTIFF entered into an agreement with the seller whereby PLAINTIFF had a contingency clause which allowed him to obtain a marine survey and engine survey, and reject the purchase agreement if the results of the surveys found problems. PLAINTIFF had both surveys performed on May 19, 2021. The engine survey was completed by Kozwel Boatworks and found the engines to be in good to fair condition without any mechanical issues. A true and correct copy of the survey is attached hereto as Exhibit "B". The marine survey was completed by Pacific Marine Surveyors and found no outstanding damage to the hull. A true and correct copy of the marine survey is attached hereto as Exhibit "C."

16. After receipt of these positive surveys PLAINTIFF completed purchase of the Seaswirl.

17. On September 28, 2021, PLAINTIFF was operating the Seaswirl and accidentally collided with the dock. The collision caused a separation between the hull and the deck

joint. PLAINTIFF was not immediately aware of the hull separation at the time of the collision.

18. PLAINTIFF continued to operate the Seaswirl in the ocean. Operation of the Seaswirl caused saltwater to enter the separation between the hull and the deck joint and enter into the engine space, causing the engines to intake saltwater, causing damage to the engines (the "LOSS").

19. On or about October 4, 2021, PLAINTIFF was operating the boat with his family when the alarms to both engines sounded and the engines died. PLAINTIFF was forced to turn off both engines and get a tow back to his marina.

20. On October 6, 2021, PLAINTIFF took the Seaswirl to Cogswell Marine for inspection and repair. Cogswell Marine removed both engines for inspection and upon inspection found a concentration of salt and corrosion inside the engines. Cogswell Marine performed tests and as a result thereof determined that the failure of the motors was a result of incoming water through the separation of the hull and deck joint.

21. The failure of the engines due to intaking saltwater through the hull separation was a covered risk under the POLICY.

22. Thereafter PLAINTIFF opened an insurance claim with PROGRESSIVE (the "CLAIM").

23. Upon review of the CLAIM, PROGRESSIVE and ROCKWELL knew that the loss was a covered risk under the POLICY.

24. ROCKWELL hired HUNTER and CONSULTING to prepare a fraudulent report which would allow PROGRESSIVE and ROCKWELL to deny the CLAIM.

25. On October 27, 2021, HUNTER performed a survey of the Seaswirl with the intent to write a fraudulent report which would allow PROGRESSIVE and ROCKWELL to deny the CLAIM.

26. On or about November 2, 2021, CONSULTING and HUNTER produced a report finding that there was separation of the hull and deck joint, as well as salt and sand in the

engines, but denied any damage internally to the engines. The report claimed that further tests were required to determine whether there was any damage to the engines.

27. At the time that they wrote the report, CONSULTING and HUNTER knew that there was internal damage to the engines as a result of saltwater intake.

28. On November 6, 2021, PROGRESSIVE and ROCKWELL denied coverage of the CLAIM. PROGRESSIVE and ROCKWELL's cause of coverage denial was, (1) "our investigation reveals the claimed damages to the vessel and hull are not consistent with the reported events"; (2) "the damages to the engines are a result of delamination and structural breakdown"; (3) the Policy "does not cover damages that are a result of wear and tear, mechanical failures, delamination nor structural breakdown"; and (4) the damages occurred before the Policy incepted.

29. Prior to the denial, PROGRESSIVE and ROCKWELL failed to complete the additional diagnostics tests CONSULTING and HUNTER informed them were required to determine whether the engines were damaged as a result of water intake.

30. On November 22, 2021, PLAINTIFF, at his own expense, had an independent survey performed by Kells Christian, which found "significant salt build up in the starboard engine's air filter housing. The trail of salt is visible into the hose leading to the air intake side of the turbo charger." Kells Christian also found evidence of corrosion on the engines, and in the engine space, more on the starboard than on the port. Kells Christian found the starboard hull/rubrail separation as a "likely" source of the saltwater intrusion. The Kells Christian report found that further analysis of the engines was required to determine the damage to them.

31. Thereafter, PLAINTIFF, at his own expense, arranged for an oil analysis and scope test of the engines. The oil analysis indicated excessive sodium in the oil, with the starboard engine having more. The scope test showed internal corrosion to the engines which required repair.

32. As a direct result of PROGRESSIVE's coverage denial, PLAINTIFF was forced to hire an attorney, Edward C. Walton of Procopio Cory Hargreaves and Savitch, LLP and subsequently, Haffner and Morgan, LLP.

33. On January 7, 2022, Mr. Walton sent PROGRESSIVE a letter, detailing the timeline of events, providing the reports and information obtained by PLAINTIFF after PROGRESSIVE's denial, and demanding further evaluation or in the alternative, the policy limits of the POLICY for the damage.

34. On January 20, 2022, PROGRESSIVE sent a letter to PLAINTIFF's attorney stating that in spite of the new information their previous denial remains unaltered, but that they were open to further investigation. PROGRESSIVE stated that they were willing to complete a reinspection utilizing their previous surveyor, in which they would perform a spray test and further diagnose the engines.

35. Thereafter, on April 27, 2022, an additional inspection was performed by HUNTER and CONSULTING. No spray test was performed at this inspection.

36. Thereafter, on May 18, 2022, PROGRESSIVE and ROCKWELL claimed there was no coverage for the LOSS, stating that the inspections revealed the mechanical damages to the vessel were not consistent with the reported events.

37. As a result, PLAINTIFF has suffered damages in an amount according to proof at the time of trial, as further set forth below.

### SECOND CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing**

**as to PROGRESSIVE and Does 11-20)**

38. PLAINTIFF incorporates by reference all preceding paragraphs of this complaint as if fully set forth here, and further alleges as follows:

39. The handling supervisor for the team that handled PLAINTIFF's claim, while acting in the course and scope of employment with PROGRESSIVE, exercised almost total discretion to dispose of PLAINTIFF's claim with no or little day-to-day supervision, and exercised substantial discretionary authority to pay or not pay benefits owing to

1    PLAINTIFF. The handling adjuster ultimately made the decision to deny PLAINTIFF's

2    claim. Thus, the handling adjuster was a managing agent of PROGRESSIVE.

3  40. PROGRESSIVE, through its authorized managing agents, names unknown,

4    unreasonably, intentionally and maliciously breached its duty of good faith and fair

5    dealing that California law implies in all contracts between parties entered into in the

6    State of California. Defendants, and each of them, unreasonably, intentionally and

7    maliciously breached the implied covenant of good faith and fair dealing contained in its

8    policy by, including, but not limited to: unreasonably, maliciously, oppressively and

9    fraudulently only seeking evidence to undermine coverage, not seeking and ignoring

10   evidence which would tend to support coverage, withholding benefits under the POLICY

11   by claiming that the damage existed prior to PLAINTIFF's purchase of the Seaswirl, with

12   no evidence to support that claim, failing to properly evaluate PLAINTIFF's claim prior

13   to the denial of November 22, 2021 and May 18, 2022, by insisting, without evidence,

14   that the damage was pre-existing, failing to search for evidence which supported

15   PLAINTIFF's claim prior to the denial and only searching for evidence to deny his claim,

16   refusing to pay the money due to him under the policy without cause, and forcing him to

17   hire an attorney to litigate the claims, in derogation of his rights. In committing the

18   aforementioned acts, PROGRESSIVE acted with oppression, fraud and malice with the

19   intent to willfully injure, harass, vex, and annoy plaintiff with a conscious disregard for

20   PLAINTIFF's right to payment of covered claims under the policy and PLAINTIFF's

21   right to a fair and thorough investigation of the CLAIM.  All of the aforementioned

22   alleged acts were done or ratified by defendant's management-level employees, who

23   acted with knowledge that defendant's conduct would cause plaintiff harm, in conscious

24   disregard of his rights.

25  41. As a result of the unreasonable, malicious, oppressive and fraudulent actions of

26   defendants, and each of them, said defendants have violated the implied covenant of good

27   faith and fair dealing, in violation of, including, but not limited to, Insurance Code

28

section 790, et seq., and therefore PLAINTIFF is entitled to recover damages in an amount according to proof.

### THIRD CAUSE OF ACTION

#### (Intentional Misrepresentation as to

#### ROCKWELL, HUNTER, and CONSULTING, and Does 21-30)

42. PROGRESSIVE, HUNTER, ROCKWELL, and CONSULTING, and each of them, represented to PLAINTIFF the facts, circumstances and scope of the LOSS.

43. Their representations concerning the facts, circumstances and scope of the LOSS was false; they in fact found damage to the Seaswirl that was caused by a covered loss.

44. Defendants, and each of them, knew that the representations were false when they made the representations.

45. Defendants, and each of them, intended that PLAINTIFF would rely on the representation.

46. PLAINTIFF relied on Defendants, and each of their, representations to his detriment.

47. In reliance on Defendants, and each of their, representation PLAINTIFF was forced to procure an inspection of the Seaswirl at his cost and has been without the use of his boat.

48. PLAINTIFF's reliance on Defendants, and each of their representation was the only reason PLAINTIFF was forced to procure the inspection and the reason he has been without the use of his boat.

49. PLAINTIFF's reliance on DEFENDANTS' representation was a substantial factor in causing him harm.

50. PLAINTIFF is entitled to recover damages in an amount according to proof.

### FOURTH CAUSE OF ACTION

#### (Negligent Misrepresentation as to

#### ROCKWELL, HUNTER, CONSULTING, and Does 31-40)

51. PROGRESSIVE, HUNTER, ROCKWELL, and CONSULTING, and each of them, represented to PLAINTIFF the facts, circumstances and scope of the LOSS.

52. Their representations concerning the facts, circumstances and scope of the LOSS was false; they in fact found damage to the Seaswirl that was caused by a covered loss.

53. Defendants, and each of them, may have honestly believed that the representation was true, but Defendants, and each of them, had no reasonable grounds for believing the representations were true when Defendants, and each of them, made these representations.

54. Defendants, and each of them, intended that PLAINTIFF would rely on the representation.

55. PLAINTIFF relied on Defendants, and each of their, representations to his detriment.

56. In reliance on Defendants, and each of their, representation PLAINTIFF was forced to procure an inspection of the Seaswirl at his cost and has been without the use of his boat.

57. PLAINTIFF's reliance on Defendants, and each of their representation was the only reason PLAINTIFF was forced to procure the inspection and the reason he has been without the use of his boat.

58. PLAINTIFF's reliance on DEFENDANTS' representation was a substantial factor in causing him harm.

59. PLAINTIFF is entitled to recover damages in an amount according to proof.

## FIFTH CAUSE OF ACTION

### (Conspiracy to Commit Fraud as to

### ROCKWELL, HUNTER, and CONSULTING, and Does 41-50)

60. ROCKWELL knew that HUNTER and DEFENDANT CONSULTING planned to make false representations regarding the damage from the LOSS in order to use the false representations as a pretext to deny the CLAIM.

61. ROCKWELL agreed with HUNTER and CONSULTING and intended that the false representation be made so ROCKWELL could deny the CLAIM.

62. Therefore PLAINTIFF is entitled to recover damages in an amount according to proof.

///

///

## **PRAYER FOR RELIEF**

1. Contract damages in an amount according to proof for the vessel, plus incidental damages in an amount according to proof, plus loss of use of the vehicle in an amount according to proof.

2. Tort damages as a result of the Breach of the Duty of Good Faith and Fair Dealing for special damages and general damages in an amount according to proof.

3. Tort damages as a result of the Breach of the Duty of Good Faith and Fair Dealing for exemplary and punitive damages.

4. Tort damages as a result of the Intentional Misrepresentation

5. Tort damages as a result of the Conspiracy.

6. Costs of suit.

7. Attorneys' fees.

8. Punitive Damages.

9. Interest.

10. Such other and further relief as the court may deem just and proper.

DATED: 10/25/2022                    HAFFNER & MORGAN LLP

                                     _____
                                     Christian Haffner, Esq.
                                     Attorney for Plaintiff,
                                     FRANCISCO MARQUEZ

# Exhibit A

2749 CA 0219

# CALIFORNIA

## BOAT AND PERSONAL WATERCRAFT POLICY



Form 2749 CA (02/19)
version 2.0



PROGRESSIVE®
BOAT

# CONTENTS

**INSURING AGREEMENT**......................................................................................... 1

**GENERAL DEFINITIONS**...................................................................................... 1

**PART I—LIABILITY TO OTHERS**
Insuring Agreement ..................................................................................4
Additional Definition ................................................................................4
Additional Payments .................................................................................4
Exclusions .................................................................................................5
Limits of Liability.......................................................................................7
Other Insurance .......................................................................................8

**PART II—MEDICAL PAYMENTS COVERAGE**
Insuring Agreement ..................................................................................8
Additional Definitions ...............................................................................9
Exclusions .................................................................................................9
Limits of Liability..................................................................................... 10
Unreasonable or Unnecessary Medical Expenses ......................... 11
Other Insurance ..................................................................................... 11

**PART III—UNINSURED BOATER COVERAGE**
Insuring Agreement ............................................................................... 12
Additional Definitions ............................................................................ 12
Exclusions ............................................................................................... 13
Limits of Liability..................................................................................... 14
Other Insurance ..................................................................................... 15
Arbitration................................................................................................ 15

**PART IV—DAMAGE TO A WATERCRAFT**
Insuring Agreement—Collision Coverage......................................... 16
Insuring Agreement—Comprehensive Coverage............................. 16
Insuring Agreement—Pet Injury Coverage ....................................... 16
Insuring Agreement—Total Loss Replacement/
   Purchase Price Coverage ............................................................... 17
Insuring Agreement—Agreed Value Coverage................................. 17
Insuring Agreement—Total Loss Coverage ...................................... 18
Insuring Agreement—Wreckage Removal Coverage...................... 18
Insuring Agreement—Trailer Trip Interruption Coverage ............... 19
Insuring Agreement—Mexico Coverage ........................................... 19
Additional Definitions .............................................................................20
Exclusions ................................................................................................21
Limits of Liability.....................................................................................23
Payment of Loss .....................................................................................24
Salvage .....................................................................................................24

i

No Benefit to Bailee ...........................................................................24
Loss Payable Clause .........................................................................24
Other Sources of Recovery ................................................................25
Appraisal ...........................................................................................25

## PART V—ROADSIDE ASSISTANCE COVERAGE
Insuring Agreement ...........................................................................25
Additional Definition ..........................................................................26
Exclusions .........................................................................................26
Unauthorized Service Provider ..........................................................27
Other Insurance .................................................................................27

## PART VI—SIGN & GLIDE COVERAGE
Insuring Agreement ...........................................................................27
Additional Definitions ........................................................................28
Exclusions .........................................................................................28
Other Insurance .................................................................................29

## PART VII—PROPULSION PLUS COVERAGE
Insuring Agreement—Propulsion Plus Coverage ..............................29
Additional Definitions ........................................................................30
Exclusions .........................................................................................30
Limits of Liability ...............................................................................31
Payment of Claim ..............................................................................32
Salvage .............................................................................................32
No Benefit to Bailee ...........................................................................32
Loss Payee Agreement ......................................................................33
Appraisal ...........................................................................................33

## PART VIII—REPLACEMENT COST PERSONAL EFFECTS COVERAGE
Insuring Agreement ...........................................................................33
Additional Definitions ........................................................................34
Exclusions .........................................................................................34
Limits of Liability ...............................................................................36
Payment of Loss ................................................................................37
No Benefit to Bailee ...........................................................................37
Other Sources of Recovery ................................................................37
Appraisal ...........................................................................................38

## PART IX—FISHING EQUIPMENT COVERAGE
Insuring Agreement ...........................................................................38
Additional Definitions ........................................................................38
Exclusions .........................................................................................39
Limits of Liability ...............................................................................41
Payment of Loss ................................................................................41
No Benefit to Bailee ...........................................................................41

ii

Other Sources of Recovery ............................................................................42
Appraisal ......................................................................................................42

**PART X—DUTIES IN CASE OF AN ACCIDENT OR LOSS**.................................42

**PART XI—GENERAL PROVISIONS**
Policy Period and Territory .............................................................................43
Changes........................................................................................................43
Duty to Report Changes.................................................................................44
Settlement of Claims......................................................................................44
Deductibles ...................................................................................................44
Terms of Policy Conformed to Statutes..........................................................45
Transfer of Interest .......................................................................................46
Your Warranties to Us Regarding Your Covered Watercraft.............................46
Fraud or Misrepresentation ...........................................................................46
Payment of Premium and Fees ......................................................................47
Cancellation ..................................................................................................47
Cancellation Refund ......................................................................................48
Nonrenewal...................................................................................................48
Automatic Termination ...................................................................................48
Legal Action Against Us.................................................................................49
Our Rights to Recover Payment.....................................................................49
Our Rights to Inspect.....................................................................................50
Joint and Individual Interests .........................................................................50
Bankruptcy....................................................................................................50

iii

**THE "GENERAL PROVISIONS" SECTION OF THIS POLICY CONTAINS PROVISIONS REGARDING POLICY CHANGES, CANCELLATIONS, NONRENEWALS AND AUTOMATIC TERMINATIONS. READ THESE PROVISIONS CAREFULLY BECAUSE THEY MAY AFFECT YOUR COVERAGE IN THE FUTURE.**

## CALIFORNIA BOAT AND PERSONAL WATERCRAFT POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional watercraft**" means a **watercraft you** become the owner of during the policy period that does not permanently replace a **watercraft** expressly identified on the **declarations page** if:
   a. **we** insure all other **watercraft you** own;
   b. the **additional watercraft** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional watercraft**; and
   d. **you** pay any additional premium due.

   An **additional watercraft** will have the broadest coverage **we** provide for any **watercraft** shown on the **declarations page** other than Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage. **We** will provide basic Collision Coverage and Comprehensive Coverage for the **additional watercraft** instead of Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage. If **you** decide to add any coverage to this policy or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us**, and **we** have agreed, to add the coverage or increase **your** limits. If **you** ask **us** to insure an **additional watercraft** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

3. "**Covered watercraft**" means:
   a. any **watercraft** expressly identified on the **declarations page** for the coverages applicable to that **watercraft**;
   b. any **additional watercraft**; and
   c. any **replacement watercraft**.

1

4. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered watercraft**, premium, and other policy-related information. The **declarations page** may also be referred to as the Boat Insurance Coverage Summary.

5. "**Marine electronics**" means electronic devices used for marine navigation or marine communication, including, but not limited to, portable or handheld devices such as GPS.

6. "**Motor**" means a motor or motors owned by **you** and designed to propel a **covered watercraft**, including the following parts and accessories when supplied by the manufacturer:
   a. remote controls;
   b. electric harnesses;
   c. fuel containers; and
   d. batteries.

7. "**Occupying**" means in, on, entering, exiting, or proximate to a **watercraft**, or a non-motorized **trailer** which is designed to be towed on public roads by a land motor vehicle and designed for the transportation of a **watercraft**. "**Occupying**" includes being towed by a **watercraft** while the person is on a wake board, knee board, tube, air chair, or water skis. "**Occupying**" does not include in, on, entering, exiting, or proximate to a land motor vehicle.

8. "**Permanent equipment**" means equipment permanently installed on a **covered watercraft** using bolts or brackets, including slide-out brackets. "**Permanent equipment**" includes, but is not limited to, permanently installed:
   a. **marine electronics**;
   b. fish finders; and
   c. auxiliary trolling motors.

9. "**Portable boating equipment**" means detachable boating equipment owned by **you** and customarily kept in or on a **covered watercraft** for the maintenance or use of the **watercraft**. "**Portable boating equipment**" includes, but is not limited to:
   a. anchors;
   b. oars;
   c. sails;
   d. tarpaulins;
   e. extra fuel tanks;
   f. portable cook stoves;
   g. safety and life-saving equipment;
   h. deck chairs;
   i. water skis and other water sports equipment intended to be towed by a **watercraft**, including, but not limited to, wake boards, knee boards, tubes, and air chairs; and
   j. portable **marine electronics**.

10. "**Property damage**" means physical damage to, destruction of, or loss of use of tangible property, and if **you** are required by law, the cost to clean up, remove or contain a pollutant that was suddenly and accidentally discharged, spilled, leaked, or emitted from **your watercraft**.

2

11. "**Registered domestic partner**" means a person registered with the California Secretary of State pursuant to California Family Code §298.

12. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

13. "**Replacement watercraft**" means a **watercraft** that permanently replaces a **watercraft** expressly identified on the **declarations page**. A **replacement watercraft** will have the same coverage as the **watercraft** it replaces if the **replacement watercraft** is not covered by any other insurance policy. However:

   a. if the **watercraft** being replaced had coverage under Part IV—Damage To A Watercraft, such coverage will apply to the **replacement watercraft** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days; and

   b. if the **watercraft** being replaced had Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage, **we** will provide basic Collision Coverage and Comprehensive Coverage for the **replacement watercraft** instead of Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage.

   If the **watercraft** being replaced did not have coverage under Part IV—Damage To A Watercraft, such coverage may be added, but the **replacement watercraft** will have no coverage under Part IV until **you** notify **us** of the **replacement watercraft** and ask **us** to add the coverage. If **you** decide to add any coverage to this policy or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us**, and **we** have agreed, to add the coverage or increase **your** limits.

14. "**Seaworthy**" means fit to withstand the foreseeable and expected conditions of weather, wind, waves, and the rigors of normal and foreseeable use in whatever type of waters a **watercraft** will be located. For a **watercraft** to be considered seaworthy, **you** must (without limitation):

   a. exercise due diligence to properly manage the **watercraft**;

   b. comply with all federal safety standards and provisions; and

   c. follow all customary and manufacturer-recommended maintenance guidelines.

15. "**Trailer**" means a non-motorized **trailer** owned by **you** that is shown on the **declarations page** and which is designed to be towed on public roads by a land motor vehicle and designed for the transportation of a **covered watercraft**.

16. "**Watercraft**" means a boat or other craft that is designed for use on water and has a valid manufacturer's or state-assigned hull identification number.

17. "**Watercraft sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of watercraft for use by individuals, businesses, or other entities.

18. "**We**," "**us**," and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

19. "**You**" and "**your**" mean:

   a. a person shown as a named insured on the **declarations page**; and

3

b.   the spouse or **registered domestic partner** of a named insured if residing in the same household at the time of loss.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I. In the defense of any claim, an **insured person** is entitled by law to independent counsel, and has not waived that right in writing, **we** will provide such counsel. Independent counsel may be chosen by the **insured person** provided that such counsel has the following minimum qualifications:

1.   at least five years of experience in civil litigation, including substantial defense experience in the subject at issue in the action; and
2.   errors and omissions coverage.

**We** are not obligated to pay the fees of such counsel until the **insured person** provides **us** with reasonable written proof that the counsel chosen possesses these minimum qualifications. In no event are **we** obligated to pay fees in excess of the rate that would actually be paid by **us** to an attorney in the ordinary course of business in the defense of a similar action in the community in which the claim arose or is being defended.

### ADDITIONAL DEFINITION

When used in this Part I:
"Insured person" means:

a.   **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of a **watercraft** or **trailer**;
b.   any person with respect to an accident arising out of that person's use of a **covered watercraft** or **trailer** with the permission of **you** or a **relative**;
c.   any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
d.   any Additional Interest shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1.   all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;
2.   interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court that portion of the judgment which does not exceed **our** limit

4

of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** while being used:
   a. to carry persons or property for compensation or a fee;
   b. in any illegal transportation or trade; or
   c. in any business or occupation.
   Subparts a. and c. of this exclusion do not apply to use of a **watercraft** or **trailer** for tournament fishing;

2. any liability assumed under any contract or agreement by **you** or a **relative**;

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized:
      (i)  racing;
      (ii)  stunting;
      (iii)  speed or demolition contest or activity; or
   b. any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
   This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

5. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

6. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5

7. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

8. **property damage** to any property owned by, rented to, being transported by, or in the charge of that **insured person**. The term "property" includes, without limitation, any **covered watercraft** and any **watercraft** other than a **covered watercraft**. This exclusion does not apply to a launching ramp, dock, mooring device or boat storage house rented by **you**;

9. **bodily injury** to **you** or a **relative**;

10. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** owned by **you** or furnished or available for **your** regular use, other than a **covered watercraft** or **trailer** for which this coverage has been purchased;

11. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such **watercraft** or **trailer**;

12. **bodily injury** or **property damage** arising out of **your** or a **relative's** use of a **watercraft** or **trailer**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased, without the permission of the owner of the **watercraft** or **trailer** or the person in lawful possession of the **watercraft** or **trailer**;

13. **bodily injury** or **property damage** arising out of the use of a **covered watercraft** or **trailer** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

14. punitive or exemplary damages;

15. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

16. **bodily injury** or **property damage** arising out of para-sailing, kite skiing, or any other activity involving a device designed for flight;

17. **bodily injury** or **property damage** that occurs because a **covered watercraft** is not in **seaworthy** condition;

18. **bodily injury** or **property damage** arising out of an accident involving a **watercraft** or **trailer** while being towed by or carried by a land motor vehicle;

19. payment for **bodily injury**, or any other payment or obligation, to any person eligible to receive any benefits required to be provided by **you** under the Jones Act or Federal Longshoremen's and Harbor Workers' Compensation Act; or

20. **bodily injury** or **property damage** arising out of an accident while using a **watercraft** as a primary or permanent residence.

6

**Howe Decl., Exhibit 1**
**Page 021**

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1.  claims made;
2.  **covered watercraft**;
3.  **insured persons**;
4.  lawsuits brought;
5.  **watercraft** or **trailers** involved in the accident;
6.  premiums paid; or
7.  **trailers**.

If **your declarations page** shows a split limit:

1.  the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2.  subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3.  the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

Except as otherwise provided by law, the "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured Boater Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

A **watercraft** and:

1.  a **trailer** which the **watercraft** is in or on;

7

2.   a **trailer** to which the **watercraft** is attached;

3.   a **trailer** which the **watercraft** is in the process of being placed onto or into; or

4.   a **trailer** from which the **watercraft** is in the process of being removed;

are considered one **watercraft** for purposes of determining the limits of liability under this Part I. Therefore, the limits of liability will not be increased for an accident involving a **watercraft** and **trailer** in any of the aforementioned circumstances.

If **you** are legally required to pay for the cost of any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** or a **watercraft** of others, then **we** will pay under this Part I up to the limit of liability for **property damage**, reduced by any other amounts paid or payable under this Part I for **property damage**. However, if Wreckage Removal Coverage applies under Part IV—Damage To A Watercraft, **we** will pay for the cost of any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** pursuant to the limits set forth in the Wreckage Removal Coverage.

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, will be excess over any other collectible insurance, self-insurance, or bond.

If there is any other applicable liability insurance or bond, any liability insurance **we** provide will be excess over any other applicable liability insurance or bond. If more than one liability insurance policy or bond applies on an excess basis, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

## PART II—MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of an accident involving a **watercraft** or **trailer** because of **bodily injury**:

1.   sustained by an **insured person**; and

2.   caused by that accident.

**We**, or someone on **our** behalf, will determine:

1.   whether the expenses for **medical services** are reasonable; and

2.   whether the **medical services** are necessary.

8

**ADDITIONAL DEFINITIONS**

When used in this Part II:
1. "**Insured person**" means:
   a. **you** or a **relative**:
      (i) while **occupying** a **watercraft** or **trailer**; or
      (ii) when struck, while not **occupying** a **watercraft**, by a:
         (a) **watercraft**; or
         (b) **trailer** designed to transport a **watercraft** and to be towed on public roads by a land motor vehicle; and
   b. any other person while **occupying** a **covered watercraft** or **trailer** with the permission of **you** or a **relative**.
2. "**Medical services**" means medical, surgical, funeral, dental, x-ray, ambulance, hospital, and professional nursing services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, and orthopedic and prosthetic devices.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II will not apply to **bodily injury**:
1. sustained by any person while **occupying** a **covered watercraft** or **trailer** while it is being used:
   a. to carry persons or property for compensation or a fee;
   b. in any illegal transportation or trade; or
   c. in any business or occupation.
   Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** or **trailer** for tournament fishing;
2. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized:
      (i) racing;
      (ii) stunting;
      (iii) speed or demolition contest or activity; or
   b. any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
   This exclusion does not apply to **bodily injury** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;
3. due to a nuclear reaction or radiation;
4. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
5. for which the United States Government is liable under the Federal Tort Claims Act;

9

**Howe Decl., Exhibit 1**
**Page 024**

6. sustained by any person while **occupying** or when struck by any **watercraft** or **trailer** owned by **you** or furnished or available for **your** regular use, other than a **covered watercraft** or **trailer** for which this coverage has been purchased;

7. sustained by any person while **occupying** or when struck by any **watercraft** or **trailer** owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased. This exclusion does not apply to **you**;

8. to **you** or a **relative** while **occupying** any **watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, without the permission of the owner of the **watercraft** or **trailer** or the person in lawful possession of the **watercraft** or **trailer**;

9. to any person while **occupying** a **covered watercraft** or **trailer** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

10. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

11. sustained by any person while **occupying** any **watercraft** or **trailer** while located for use as a residence or premises;

12. if workers' compensation benefits, or similar benefits, are available for the **bodily injury** under any state, federal, or maritime law;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

15. arising out of para-sailing, kite skiing, or any other activity involving a device designed for flight;

16. sustained by any person while a **watercraft** or **trailer** is being towed by or carried by a land motor vehicle; or

17. that occurs because the **covered watercraft** is not in **seaworthy** condition.

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident regardless of the number of:

1. claims made;

10

2. **covered watercraft**;
3. **insured persons**;
4. lawsuits brought;
5. **watercraft** or **trailers** involved in the accident;
6. premiums paid; or
7. **trailers**.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured Boater Coverage.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person** occupying a **watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, will be excess over any other insurance providing payments for **medical services**.

11

## PART III—UNINSURED BOATER COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured watercraft** because of **bodily injury**:
1.  sustained by an **insured person**;
2.  caused by an accident; and
3.  arising out of the ownership, maintenance, or use of an **uninsured watercraft**.

**We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured watercraft** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

**ADDITIONAL DEFINITIONS**

When used in this Part III, whether in the singular, plural, or possessive:
1.  "**Insured person**" means:
    a.  **you** or a **relative**;
    b.  any person while operating a **covered watercraft** with the permission of **you** or a **relative**;
    c.  any person **occupying**, but not operating, a **covered watercraft** or a **trailer**; and
    d.  any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b., or c. above.
2.  "**Uninsured watercraft**" means a **watercraft** of any type:
    a.  to which no bodily injury liability bond or policy applies at the time of the accident;
    b.  to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
        (i)   denies coverage; or
        (ii)  is or becomes insolvent;
    c.  that is a hit-and-run **watercraft** whose operator or owner cannot be identified and which strikes:
        (i)   **you** or a **relative**;
        (ii)  a **watercraft** that **you** or a **relative** are **occupying**; or
        (iii) a **covered watercraft** or **trailer**;
        provided that the **insured person**, or someone on his or her behalf, reports the accident to the coast guard, police, or other civil authority within 24 hours or as soon as practicable after the accident; or

12

    d.   to which a bodily injury liability bond or policy applies at the time of the ac-
        cident, but the sum of all applicable limits of liability for bodily injury is less
        than the coverage limit for Uninsured Boater Coverage shown on the **dec-
        larations page**.

An "**uninsured watercraft**" does not include any **watercraft**, **trailer**, or equip-
ment:

    a.   owned by **you** or a **relative** or furnished or available for the regular use of
        **you** or a **relative**;
    b.   owned or operated by a self-insurer, except a self-insurer that is or becomes
        insolvent;
    c.   while located for use as a permanent or primary residence;
    d.   owned by any governmental unit or agency;
    e.   that is a **covered watercraft** or **trailer**; or
    f.   that is being towed by or carried by a land motor vehicle.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN
EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS
PART III.**

Coverage under this Part III will not apply to:

1.   **bodily injury** sustained by any person while using or **occupying** a **covered
      watercraft** or **trailer** while being used:
    a.   to carry persons or property for compensation or a fee;
    b.   in any illegal transportation or trade; or
    c.   in any business or occupation.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft**
    or **trailer** for tournament fishing;
2.   **bodily injury** sustained by any person resulting from, or sustained during prac-
      tice or preparation for:
    a.   any pre-arranged or organized:
        (i)   racing;
        (ii)  stunting;
        (iii) speed or demolition contest or activity; or
    b.   any driving, riding, navigation, piloting, or boating activity conducted on a
        permanent or temporary racecourse.
    This exclusion does not apply to **bodily injury** resulting from the use of a sail-
    boat in any pre-arranged or organized racing or speed contest, or in practice or
    preparation for any such contest;
3.   **bodily injury** sustained by **you** or a **relative** while using any **watercraft** or
      **trailer**, other than a **covered watercraft** or **trailer**, without the permission of
      the owner of the **watercraft** or **trailer** or the person in lawful possession of the
      **watercraft** or **trailer**;
4.   **bodily injury** arising out of the use of a **covered watercraft** or **trailer** while be-
      ing used in connection with a **watercraft sharing program**. This exclusion does
      not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

13

5. directly or indirectly benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law;
   b. disability benefits law;
   c. Jones Act; or
   d. Federal Longshoremen's and Harbor Workers' Compensation Act;
6. any punitive or exemplary damages;
7. **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent;
8. **bodily injury** sustained by any person while using or **occupying** a **watercraft** or **trailer** that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered watercraft** or **trailer** that is insured under this Part III;
9. **bodily injury** sustained by any person while using or **occupying**:
   a. a para-sail, kite ski, or any other device designed for flight;
   b. a **covered watercraft** or **trailer** while leased or rented to others or given in exchange for any compensation; or
   c. a **covered watercraft** or **trailer** without the express or implied permission of **you**, a **relative**, or the owner of the **covered watercraft** or **trailer**; or
10. any accident involving a **watercraft** or **trailer** that is being towed by or carried by a land motor vehicle.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured Boater Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered watercraft**;
3. **insured persons**;
4. lawsuits brought;
5. **watercraft** or **trailers** involved in the accident;
6. premiums paid; or
7. **trailers**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

14

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The Limits of Liability under this Part III shall be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2. paid or payable under Part I—Liability To Others; and
3. paid or payable because of **bodily injury** under any of the following or similar laws:
   a. workers' compensation law;
   b. disability benefits law;
   c. Jones Act; or
   d. Federal Longshoremen's and Harbor Workers' Compensation Act.

**We** will not pay under this Part III any expenses paid or payable under Part II—Medical Payments Coverage.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured boater coverage or similar coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide with respect to a watercraft that is not a **covered watercraft**, or with respect to a trailer that is not a **trailer**, will be excess over any other uninsured or underinsured boater coverage or similar coverage.

## ARBITRATION

If **we** and an **insured person** cannot agree on:
1. the legal liability of the operator or owner of an **uninsured watercraft**; or
2. the amount of the damages sustained by the **insured person**;
this will be determined by arbitration if **we** and the **insured person** mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within 30 days,

15

then on joint application by the **insured person** and **us**, the third arbitrator will be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:
1.  the legal liability of the operator or owner of an **uninsured watercraft**; and
2.  the amount of the damages sustained by the **insured person**.
The arbitrators will have no authority to award an amount in excess of the limit of liability.

**We** and an **insured person** may agree to an alternate form of arbitration.

## PART IV—DAMAGE TO A WATERCRAFT

### INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a **covered watercraft** resulting from **collision**.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a **covered watercraft** that is not caused by **collision**.

A loss not caused by **collision** includes:
1.  impact with an animal (including a bird);
2.  explosion or earthquake;
3.  fire;
4.  malicious mischief or vandalism;
5.  missiles or falling objects;
6.  riot or civil commotion;
7.  theft or larceny;
8.  windstorm, hail, water, or flood; or
9.  breakage of glass not caused by **collision**.

### INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased both Collision Coverage and Comprehensive Coverage for at least one **covered watercraft** under **your** policy, and if **your pet** sustains injury or death while aboard a **covered watercraft** at the time of a loss covered under Collision Coverage or Comprehensive Coverage, **we** will provide:
1.  up to $1,000 for reasonable and customary veterinary fees incurred by **you** or a **relative** if **your pet** is injured in, or as a direct result of, the covered loss; or

16

2.  a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered watercraft**, **we** will provide the death benefit provided **your pet** is aboard that **watercraft** at the time of the theft and **your pet** is not recovered.

## INSURING AGREEMENT—TOTAL LOSS REPLACEMENT/ PURCHASE PRICE COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply, and the following provision shall apply to a loss to that **covered watercraft**:

1.  The limit of liability for a **covered watercraft** for which Total Loss Replacement/ Purchase Price Coverage was purchased is as follows:
    a.  for a loss that **we** determine to be a total loss to the **covered watercraft**:
        (i)  if the **covered watercraft** is, at the time of the total loss, the current model year or the first through fourth preceding model year, and:
            (a)  **you** replace the **covered watercraft our** limit of liability shall be the cost, not to exceed 120 percent of the **purchase price**, as determined by **us**, of a replacement **watercraft** that is:
                (1)  to the extent possible, the same make, class, size, and type as, and which contains comparable equipment to, the **covered watercraft**; and
                (2)  of any model year, as determined by **us**, but no older than the model year of the **covered watercraft**; or
            (b)  **you** do not replace the **covered watercraft**, **our** limit of liability shall be the **purchase price** for the **covered watercraft**; or
        (ii)  if the **covered watercraft** is, at the time of the total loss, the fifth preceding model year or older, **our** limit of liability shall be the **purchase price**;
    b.  for a loss to the **covered watercraft** that **we** determine to not be a total loss, **our** limit of liability is the lowest of:
        (i)  the amount necessary to replace the stolen or damaged property;
        (ii)  the amount necessary to repair the damaged property to its pre-loss condition; or
        (iii)  the **purchase price** for the **covered watercraft**.

## INSURING AGREEMENT—AGREED VALUE COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply, and the following provision shall apply to a loss to that **covered watercraft**:

1.  The limit of liability for a **covered watercraft** for which Agreed Value Coverage was purchased is as follows:
    a.  for a loss that **we** determine to be a total loss to the **covered watercraft**, **our** limit of liability is the **agreed value** for the **covered watercraft**; or

17

b. for a loss to the **covered watercraft** that **we** determine to not be a total loss, **our** limit of liability is the lowest of:
   (i) the amount necessary to replace the stolen or damaged property;
   (ii) the amount necessary to repair the damaged property to its pre-loss condition; or
   (iii) the **agreed value** for the **covered watercraft**.

## INSURING AGREEMENT—TOTAL LOSS COVERAGE

If **we** determine there is a total loss to a **watercraft** shown on the **declarations page** and **you** have paid the premium for this coverage for that **watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply to that total loss to the **watercraft**. Instead, **we** will pay the manufacturer suggested retail price of a current model year **watercraft** that is the same make and model as the **watercraft** for which this coverage is shown on the **declarations page**. If such a current model year **watercraft** is not available, **we** will pay the manufacturer suggested retail price of a current model year **watercraft** that is the make and model **we** determine to be the most comparable to the **watercraft** for which this coverage is shown on the **declarations page**.

Total Loss Coverage is not available for any **watercraft** with a model year more than two years old at the time **your** policy renews. If a **covered watercraft** has a model year more than two years old at the time **your** policy renews, Total Loss Coverage will not apply to that **watercraft** and will not be shown on the **declarations page** for that **watercraft**. Instead, subsection 1. of the Limits of Liability provision under this Part IV will apply to that **watercraft**.

## INSURING AGREEMENT—WRECKAGE REMOVAL COVERAGE

If **you** pay the premium for Collision Coverage and Comprehensive Coverage, **we** will pay reasonable costs incurred by **you** for any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** resulting from any loss for which Collision Coverage or Comprehensive Coverage is provided under this Part IV.

If **you** are legally required to raise, remove, tow, or destroy the wreckage, **our** limit of liability for costs incurred shall not exceed the sum of:
1. the limit of liability for **property damage** coverage, if any, shown on the **declarations page** for such **covered watercraft**, reduced by any amounts paid or payable for **property damage** under Part I—Liability To Others;
2. the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**, reduced by the amount paid or payable under this Part IV for loss to the **covered watercraft** and by the applicable Collision Coverage or Comprehensive Coverage deductible; and
3. five percent of the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**.

18

If **you** are not legally required to raise, remove, tow, or destroy the wreckage, **our** limit of liability for costs incurred shall not exceed the sum of:

1.  the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**, reduced by the amount paid or payable under this Part IV for loss to the **covered watercraft** and by the applicable Collision Coverage or Comprehensive Coverage deductible; and
2.  five percent of the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**.

## INSURING AGREEMENT—TRAILER TRIP INTERRUPTION COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, **we** will reimburse interruption expenses as described below that result from:

1.  mechanical breakdown of; or
2.  sudden, direct, and accidental loss to;

**your trailer** while carrying that **covered watercraft**, or a land motor vehicle while towing **your trailer** while the **trailer** is carrying that **covered watercraft**.

For this coverage to apply, the breakdown or loss must occur more than 100 miles from the insured's primary residence.

Covered interruption expenses consist of the following:

1.  up to $100 per day for lodging;
2.  up to $50 per day for meals; and
3.  up to $50 per day for alternate transportation.

Coverage is limited to $500 per breakdown or loss. Payment of Trailer Trip Interruption benefits will not obligate **us** to make any payment under any other coverage in this policy.

Trailer Trip Interruption Coverage will not apply to:

1.  repeated service calls for a motor vehicle or **trailer** in need of routine maintenance or repair;
2.  breakdown or loss that results from an intentional or willful act or action by **you**, a **relative**, or the operator of the motor vehicle or **trailer**;
3.  off-road vehicles which are not subject to motor vehicle registration and licensing; or
4.  motor vehicles or **trailers** while being used for business or commercial purposes.

## INSURING AGREEMENT—MEXICO COVERAGE

In addition to the territory specified in Part XI—General Provisions, if **you** pay the premium for Collision Coverage and Comprehensive Coverage, coverage under this Part IV shall apply to any loss meeting the requirements for coverage under this Part IV that occurs within any state, territory, or possession of Mexico, including ocean

19

waters within 75 nautical miles of its coast. Payment for any loss covered under this Part IV that occurs in Mexico will be made in the United States. If a **covered watercraft** must be repaired in Mexico, **we** will pay only for those repairs that must be performed in order to return the **covered watercraft** to the United States and **we** will not pay more than the reasonable cost for such repairs usually charged at the nearest port of call in the United States.

This Mexico Coverage does not apply if liability insurance from a licensed Mexican insurance company is not in force at the time of loss.

The **covered watercraft** shall not remain in any state, territory, possession, or territorial waters of Mexico for more than 30 consecutive days. If the **covered watercraft** remains in any state, territory, possession, or territorial waters of Mexico for more than 30 consecutive days, the Mexico Coverage afforded under this Part IV shall not apply beyond the 30 days and shall not be available again until the **covered watercraft** exits any state, territory, possession, or territorial waters of Mexico and returns to within 75 nautical miles from the coast of the United States or Canada.

**WARNING**: **WATERCRAFT** ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO, NOT THE LAWS OF THE UNITED STATES. UNDER MEXICAN LAW, **WATERCRAFT** ACCIDENTS MIGHT BE CONSIDERED A CRIMINAL OFFENSE AS WELL AS A CIVIL MATTER. **YOU** MIGHT BE REQUIRED BY MEXICAN LAW TO PURCHASE LIABILITY INSURANCE THROUGH A LICENSED MEXICAN INSURANCE COMPANY. THE COVERAGE **WE** PROVIDE UNDER THIS POLICY DOES NOT MEET MEXICAN INSURANCE REQUIREMENTS.

### ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Agreed value**" means the "agreed value" as shown on the **declarations page**.
2. "**Collision**" means the upset of a **watercraft** or **trailer** or its impact with another watercraft or object. **Collision** includes those collisions caused by the failure of a line or mooring device securing a **watercraft**, other than such failures resulting from a:
   a. windstorm;
   b. flood;
   c. hailstorm;
   d. rainstorm; or
   e. thunderstorm or other weather event;
   for which a governmental agency issued a watch, warning, advisory, or similar notice.
3. "**Covered watercraft**" means a "**covered watercraft**" as defined in the "General Definitions" section of this policy, including the following components:
   a. **motor(s)**;
   b. **permanent equipment** even if temporarily stored ashore;
   c. **portable boating equipment** while used with the **covered watercraft** or while temporarily stored ashore; and
   d. **trailer**.

20

**Howe Decl., Exhibit 1**
**Page 035**

4.  "**Purchase price**" means the "purchase price" as shown on the **declarations page**.
5.  "**Your pet**" means any dog or cat owned by **you** or a **relative**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.**

Coverage under this Part IV will not apply for loss:
1.  to any **watercraft** or **trailer** while being used:
    a.  to carry persons or property for compensation or a fee;
    b.  in any illegal transportation or trade; or
    c.  in any business or occupation.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** or **trailer** for tournament fishing;
2.  resulting from, or sustained during practice or preparation for:
    a.  any pre-arranged or organized:
        (i)   racing;
        (ii)  stunting;
        (iii) speed or demolition contest or activity; or
    b.  any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
    This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;
3.  to any **watercraft** or **trailer** for which insurance:
    a.  is afforded under a nuclear energy liability insurance contract; or
    b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
4.  caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of a **covered watercraft**, even if the actual damage is different than that which was intended or expected;
5.  to a **covered watercraft** while it is leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** by **you** or a **relative**;
6.  to any **watercraft** or **trailer** caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of a **covered watercraft**. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **covered watercraft** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;
7.  due to destruction or confiscation of a **covered watercraft** by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;
8.  due and confined to:
    a.  wear and tear;

21

    b.   mechanical, electrical, or structural breakdown; or

    c.   any design, manufacturing, or latent defect;

    of any **trailer**;

9.  to a **covered watercraft** for diminution of value;

10.  caused directly or indirectly by:

    a.   termites and other insects;

    b.   birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;

    c.   marine life; or

    d.   smog, humidity, mildew, mold, ice, freezing, thawing, or extremes of temperature.

    This exclusion does not apply to:

    a.   loss resulting from impact with an animal or marine life; or

    b.   ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

11.  caused directly or indirectly by:

    a.   war (declared or undeclared) or civil war;

    b.   warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

    c.   insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12.  to any **covered watercraft** caused directly or indirectly by:

    a.   any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or

    b.   any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

13.  that occurs because a **covered watercraft** is not in **seaworthy** condition;

14.  arising out of an accident while using a **watercraft** as a primary or permanent residence;

15.  due to theft or conversion of a **covered watercraft**:

    a.   by **you**, a **relative**, or any resident of **your** household;

    b.   prior to its delivery to **you** or a **relative**; or

    c.   while in the care, custody, or control of anyone engaged in the business of selling the **covered watercraft** while the **covered watercraft** is left in an unsecured condition or location for purposes of selling;

16.  caused directly or indirectly by:

    a.   wear and tear;

    b.   gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, delamination, or blistering;

    c.   dock rash or other gradual marring or scratching;

    d.   mechanical, electrical, or structural breakdown; or

    e.   any design, manufacturing, or latent defect;

    of any **watercraft**.

    This exclusion does not apply:

    a.   if the damage results from the theft of a **covered watercraft**; or

22

   b.   to ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

17.  to any personal property other than a **covered watercraft**;

18.  to a **covered watercraft** if repairs are made in Mexico, except for those repairs that must be performed in Mexico in order to return the **covered watercraft** to the United States;

19.  that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs; or

20.  to a **trailer** for a **watercraft** with Total Loss Coverage if **you** do not provide documentation establishing that the amount shown on the declarations page for that **watercraft** included the **trailer** for which coverage is sought.

## LIMITS OF LIABILITY

1.  The limit of liability for loss to a **covered watercraft** is the lowest of:
   a.   the actual cash value of the **covered watercraft** at the time of the loss. If the stolen or damaged property was an **additional watercraft** or **replacement watercraft**, the actual cash value for purposes of this subparagraph a. will not exceed the **watercraft** value shown on **your declarations page** unless **you** have notified **us** of the **additional watercraft** or **replacement watercraft** and paid any additional premium due;
   b.   the amount necessary to replace the stolen or damaged property;
   c.   the amount necessary to repair the damaged property to its pre-loss condition; or
   d.   the amount shown on the **declarations page** for that **covered watercraft**.

2.  Payments for loss to a **covered watercraft** are subject to the following provisions:
   a.   Coverage for **permanent equipment** and **portable boating equipment** will not cause **our** limit of liability for loss to a **watercraft** under this Part IV to be increased to an amount in excess of the actual cash value of the **watercraft**, including its **permanent equipment** and **portable boating equipment**.
   b.   In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i)   will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:
         (a)  original manufacturer parts or equipment; and
         (b)  nonoriginal manufacturer parts or equipment.
   c.   **We** may make reductions for unrepaired prior damage in determining the amount of loss.
   d.   The actual cash value is determined by the market value, age, and condition of the **covered watercraft** at the time the loss occurs.

23

e. In the event of a loss to part of a pair, set or series of objects, pieces, or panels, **we** may elect to:
   (i) pay to repair or replace any part needed to restore the pair, set, or series to its pre-loss condition; or
   (ii) pay the cost of a substitute part that reasonably matches the remainder of the pair, set, or series.

**We** have no obligation to repair or replace the entire pair, set, or series if only a portion is lost or damaged.

3. If there is more than one **covered watercraft**, coverage will be provided as specified on the **declarations page** as to each **covered watercraft**.
4. In the event of a loss to an inflatable **covered watercraft**, **we** will pay for repairs made in accordance with the manufacturer's specifications or accepted repair practices, including repairs by airtight patch or similar method.
5. Duplicate recovery for the same elements of damages is not permitted.
6. The following additional limits of liability apply to Pet Injury Coverage:
   a. The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.
   b. If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

## PAYMENT OF LOSS

**We** may, at **our** option:
1. pay for the loss in money; or
2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## SALVAGE

If **we** determine that **your covered watercraft** is a total loss and **we** pay the applicable limit of liability, **we** are entitled to salvage at the same percent that **our** limit of liability bears to the actual cash value of **your covered watercraft**.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered watercraft** will be made according to **your** interest and the interest of any lienholder shown on the **declarations**

24

**page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered watercraft** is not a total loss, **we** may make payment to **you** and the repairer of the **watercraft**.

The lienholder's interest will not be protected:
1.  where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2.  where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance that **we** provide for a **watercraft**, other than a **covered watercraft**, will be excess over any other collectible source of recovery including, but not limited to:
1.  any coverage provided by the owner of a **watercraft** other than a **covered watercraft**;
2.  any other applicable physical damage insurance; and
3.  any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **you** nor **we** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered**

25

**emergency** while **your covered watercraft** is being towed by or carried by a land motor vehicle or being loaded or unloaded from its **trailer**:

1. towing of the motor vehicle and **covered watercraft** (including **trailer**) to the nearest qualified repair facility; and
2. labor on the motor vehicle and/or **trailer** at the place of disablement.

If the motor vehicle and **covered watercraft** (including **trailer**) are towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

## ADDITIONAL DEFINITION

When used in this Part V:
"**Covered emergency**" means a disablement of a motor vehicle or **trailer** that results from:
a. mechanical or electrical breakdown;
b. battery failure;
c. insufficient supply of fuel, oil, water, or other fluid;
d. a flat tire;
e. lock-out; or
f. entrapment in snow, mud, or sand within 100 feet of a road or highway.

## <u>EXCLUSIONS</u>—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered watercraft** (including **trailer**) in a 12-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products and materials not related to the disablement;
4. labor not related to the disablement;
5. labor for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags, or awnings;
8. damage or disablement due to fire, flood, or vandalism;
9. towing from a service station, garage, or repair shop;
10. labor or repair work performed at a service station, garage, or repair shop;
11. vehicle storage charges;
12. a second service call or tow for a single disablement;
13. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
14. mounting or removing of snow tires or chains;

26

15. tire repair;
16. repeated service calls for a motor vehicle or **trailer** in need of routine mainte-
nance or repair;
17. disablement that results from an intentional or willful act or action by **you**, a **rela-
tive**, or the operator of the motor vehicle or **trailer**;
18. off-road vehicles which are not subject to motor vehicle registration and licensing;
19. motor vehicles or **trailers** used for business or commercial purposes; or
20. any **covered watercraft** or **trailer** while being used in connection with a **water-
craft sharing program**.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assis-
tance and towing services, other than one of **our** authorized service representatives,
**we** will pay only reasonable charges, as determined by **us**, for:
1. towing of a motor vehicle and **covered watercraft** (including **trailer**) to the near-
est qualified repair facility; and
2. labor on a motor vehicle and/or **trailer** at the place of disablement;
which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized
service provider will be excess over any other collectible insurance or towing protec-
tion coverage.

## PART VI—SIGN & GLIDE® COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage for a **covered watercraft**, one of **our** autho-
rized service representatives will send one **watercraft** to provide **you** with **covered
services** that are necessary due to a **covered disablement** involving that **covered
watercraft**.

If none of **our** authorized service representatives are available, **we** will pay the rea-
sonable charges, as determined by **us**, for **covered services** rendered by a licensed
service provider that **you** or a **relative** incur due to the **covered disablement**. How-
ever, **we** will not pay for such **covered services** unless **we** were given notice and
approved the use of the licensed service provider in advance. **We** will not pay more
than $250 per hour or $3,000 per **covered disablement** for **covered services** ren-
dered by a provider other than one of **our** authorized service representatives.

Duplicate recovery for the same elements of damages is not permitted under this
policy.

27

**Howe Decl., Exhibit 1**
**Page 042**

THIS COVERAGE IS NOT A PROMISE OF, OR COMMITMENT TO PROVIDE OR PAY FOR, RESCUE. IN AN EMERGENCY SITUATION, **YOU** MUST IMMEDIATELY CONTACT THE COAST GUARD OR OTHER GOVERNMENT AGENCY.

**ADDITIONAL DEFINITIONS**

When used in this Part VI:
1.  "**Covered disablement**" means the disablement of a **covered watercraft** while afloat that results from:
    a.  mechanical or electrical breakdown;
    b.  battery failure;
    c.  insufficient supply of fuel, oil, water, or other fluid;
    d.  lock-out; or
    e.  soft grounding.
    "**Covered disablement**" does not include any disablement resulting from a loss covered, or for which coverage is sought, under Collision Coverage or Comprehensive Coverage.
2.  "**Covered services**" means the following services:
    a.  the following if performed at the place of **covered disablement**:
        i.   jump start;
        ii.  delivery of fuel, oil or other fluid;
        iii. disentanglement that does not require use of a diver; and
        iv.  soft ungrounding assistance, but only if the **covered watercraft**:
            1)  is in a stable, safe condition;
            2)  is not in dangerous surf or a dangerous surf line;
            3)  is surrounded by water on all sides;
            4)  can be rocked; and
            5)  can be refloated upon initial arrival or at the next high tide in 15 minutes or less by one **watercraft** from **our** authorized service representative; and
    b.  on water towing from the site of the **covered disablement** to the nearest accessible dock or port where the **watercraft** can be repaired or removed from the water. If the **covered watercraft** is towed to any place other than the nearest such dock or port, **you** will be responsible for any additional charges incurred.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VI.**

Coverage under this Part VI will not apply to:
1.  the cost of purchasing parts, fluid, lubricants, fuel or replacement keys, or the labor to make replacement keys;
2.  installation of products and materials not related to the **covered disablement**;
3.  labor not related to the disablement;
4.  labor for any time period in excess of 60 minutes per disablement;

28

5. towing or storage related to impoundment, abandonment, illegal docking or mooring, or other violations of law or regulations;
6. damage or disablement due to fire. This exclusion does not apply to fire caused by a **covered disablement**;
7. damage or disablement due to vandalism;
8. towing from a repair facility;
9. labor or repair work performed at a repair facility;
10. **watercraft** storage, hauling, launching, commissioning, decommissioning, mooring, or docking charges or other marina charges;
11. a second service call or tow for a single disablement;
12. repeated service calls for a **covered watercraft** in need of routine maintenance or repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of the **covered watercraft**;
14. **watercraft** used for business or commercial purposes;
15. salvage operations;
16. a **covered watercraft** that is wrecked, beached, on fire, taking on water, in the surf or surf line, sinking, or sunk;
17. assistance requiring one or more pumps, divers, airbags or other special equipment;
18. **covered disablements** that occur outside the normal boating season;
19. circumstances where **our** authorized service representative determines that the **covered watercraft** cannot be reached, secured or serviced without unreasonable risk of injury to persons or damage to any property;
20. escort or navigation assistance;
21. search for lost **watercraft**;
22. retrieving anchors or other equipment;
23. United States or foreign customs fees; or
24. any **covered watercraft** or **trailer** while being used in connection with a **watercraft sharing program**.

## OTHER INSURANCE

Any coverage provided under this Part VI for service rendered by an unauthorized service provider will be excess over any other collectible insurance or labor, assistance or towing protection coverage.

## PART VII—PROPULSION PLUS® COVERAGE

### INSURING AGREEMENT—PROPULSION PLUS COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, **we** will pay for the cost to repair or replace **covered parts** in that **covered watercraft** which sustain a **breakdown**. When necessary to perform such repair or replacement, **we** also will pay for the cost to repair or replace seals, o-rings, gaskets, and water pump parts in that **covered watercraft**.

29

**ADDITIONAL DEFINITIONS**

When used in this Part VII:
1. "**Breakdown**" occurs when a **covered part** totally ceases to perform the function for which it was designed due to normal wear and tear, or defect, of the **covered part.**
2. "**Covered part**" means any of the following parts:
   a. the following components within the outboard lower unit: lower gear case housing; propeller shaft; vertical drive shaft; forward, reverse and pinion gears; sliding clutch; clutch cross pin; bearing carrier; bearings; races; shift shaft; shift cam; and shift follower;
   b. the following components within the stern drive lower unit: lower gear case housing; propeller shaft; vertical drive shaft; forward, reverse and pinion gears; sliding clutch; clutch cross pin; bearing carrier; bearings; races; shift shaft; shift cam; and shift follower;
   c. the following components within the stern drive upper unit: upper drive shaft housing; vertical drive shaft; vertical drive shaft coupler; gears; bearings; cone clutch; shift fork; and input shaft assembly including input shaft, u-joints and yolks; and
   d. propeller(s).

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VII.**

Coverage under this Part VII will not apply to:
1. a **covered watercraft**:
   a. while being used:
      i. to carry persons or property for compensation or a fee;
      ii. in any illegal transportation or trade; or
      iii. in any business or occupation.
      Subparts i. and iii. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;
   b. for diminution of value;
   c. while it is leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** by **you** or a **relative**;
   d. while in Mexico, except for those repairs that must be performed in Mexico in order to return the **covered watercraft** to the United States; or
   e. while being used as a primary or permanent residence;
2. **breakdown**:
   a. resulting from, or sustained during practice or preparation for:
      i. any pre-arranged or organized:
         (a) racing;
         (b) stunting;
         (c) speed or demolition contest or activity; or

30

      ii.   any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.

This exclusion does not apply to **breakdown** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

    b.   caused directly or indirectly by:

        i.   weathering, rust, corrosion, osmosis, delamination, or blistering;

        ii.   dock rash or other gradual marring or scratching;

        iii.   marine life;

        iv.   smog, humidity, mildew, mold, ice, freezing, thawing, or extremes of temperature;

        v.   failure to follow all customary or manufacturer-recommended preventative maintenance guidelines, or recommendations of a repair shop, dealer or other person servicing the **covered watercraft** for compensation or a fee; or

        vi.   an issue that is the subject of a recall or voluntary repair program;

    c.   that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs; or

    d.   of a **watercraft** that occurs less than 31 days after the effective date **you** requested for this coverage for that **watercraft**;

3.   the gradual diminishing performance of a **covered part**; or

4.   an **additional watercraft** or **replacement watercraft**.

## LIMITS OF LIABILITY

1.   The limit of liability under this Part VII for a **covered watercraft** that does not have Agreed Value Coverage or Total Loss Replacement/Purchase Price Coverage is the lowest of:

    a.   the actual cash value, at the time of the **breakdown**, of the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

    b.   the amount necessary to replace the **covered part** that sustained the **breakdown**; or

    c.   the amount necessary to repair the **covered part** that sustained the **breakdown** to its pre-**breakdown** condition.

2.   The limit of liability under this Part VII for a **covered watercraft** that has Agreed Value Coverage is the lowest of:

    a.   the **agreed value** for the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

    b.   the amount necessary to replace the **covered part** that sustained the **breakdown**; or

    c.   the amount necessary to repair the **covered part** that sustained the **breakdown** to its pre-**breakdown** condition.

3.   The limit of liability under this Part VII for a **covered watercraft** that has Total Loss Replacement/Purchase Price Coverage is the lowest of:

    a.   the **purchase price** for the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

31

    b.  the amount necessary to replace the **covered part** that sustained the **breakdown**; or

    c.  the amount necessary to repair the **covered part** that sustained the **breakdown** to its pre-**breakdown** condition.

4.  Payments for **breakdown** are subject to the following provisions:

    a.  In determining the amount necessary to repair a **covered part** to its pre-**breakdown** condition, the amount to be paid by **us**:

        (i)  will not exceed the prevailing competitive labor rates charged in the area where the **covered part** is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

        (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a)  original manufacturer parts or equipment; and

            (b)  nonoriginal manufacturer parts or equipment.

    b.  **We** may make reductions for unrepaired prior damage in determining the amount to be paid.

    c.  The actual cash value is determined by the market value, age, and condition of the **covered watercraft** at the time the **breakdown** occurs.

    d.  In the event of a **breakdown** to part of a pair, set or series of objects, pieces, or panels, **we** may elect to:

        (i)  pay to repair or replace any part needed to restore the pair, set or series to its pre-**breakdown** condition; or

        (ii)  pay the cost of a substitute part that reasonably matches the remainder of the pair, set or series.

        **We** have no obligation to repair or replace the entire pair, set or series if only a portion is lost or damaged.

    e.  Duplicate recovery for the same elements of damages is not permitted.

## PAYMENT OF CLAIM

**We** may, at **our** option:

1.  pay for the **breakdown** in money; or

2.  repair or replace the **covered part(s)** that sustained the **breakdown**.

**We** may settle any claim with **you** or the owner or lienholder of the property.

## SALVAGE

If **we** determine that **your covered watercraft** is a total loss and **we** pay the applicable limit of liability, **we** are entitled to salvage at the same percent that **our** limit of liability bears to the actual cash value of **your covered watercraft**.

## NO BENEFIT TO BAILEE

Coverage under this Part VII will not directly or indirectly benefit any carrier or other bailee for hire.

**Howe Decl., Exhibit 1**
**Page 047**

## LOSS PAYEE AGREEMENT

If a **covered watercraft** is deemed by **us** to be a total loss, payment under this Part VII will be made according to **your** interest and the interest of any loss payee or lienholder shown on the **declarations page** or designated by **you**. Payment may be made to both jointly, or separately, at **our** discretion. **We** may make payment directly to the repair facility with **your** consent.

The loss payee or lienholder's interest will not be protected where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of **you** or a **relative**, or where the **breakdown** is otherwise not covered under the terms of this policy.

**We** will be entitled to the loss payee or lienholder's rights of recovery, to the extent of **our** payment to the loss payee or lienholder.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **you** nor **we** waive any rights under this policy by agreeing to an appraisal.

## PART VIII—REPLACEMENT COST PERSONAL EFFECTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to **personal effects** and **non-owned personal effects** while in or on a **covered watercraft**.

No coverage is provided for theft of **personal effects** or **non-owned personal effects** unless such items are stolen from a locked compartment or cabin, the theft is supported by evidence of forcible entry, and the insured person, or someone on his or her behalf, reports the theft to the United States Coast Guard, the police, or other civil authority within 24 hours or as soon as practicable after the loss.

33

## ADDITIONAL DEFINITIONS

When used in this Part VIII:
1. "**Fishing equipment**" means any sport fishing gear and equipment that is used in the taking of fish for sport and recreation, or for personal consumption, including, but not limited to, rods, reels, lures, lines, and tackle boxes. "**Fishing equipment**" does not include **permanent equipment**, **portable boating equipment**, or **personal effects**.
2. "**Non-owned personal effects**" means clothing and other personal property, not owned by **you** or a **relative**, which is lawfully in the possession of **you** or a **relative**. "**Non-owned personal effects**" does not include:
   a. money, traveler's checks, securities, evidence of debt, or valuable papers or documents;
   b. jewelry, watches, gems, precious stones, silver, gold, or other precious metals;
   c. antiques, fine arts, liquor, or furs;
   d. computer hardware and software;
   e. any property used in **your** or a **relative's** business or employment;
   f. animals (including birds and fish);
   g. **fishing equipment**;
   h. **permanent equipment**; or
   i. **portable boating equipment**.
3. "**Personal effects**" means clothing and other personal property owned by **you** or a **relative**. "**Personal effects**" does not include:
   a. money, traveler's checks, securities, evidence of debt, or valuable papers or documents;
   b. jewelry, gems, precious stones, watches, silver, gold, or other precious metals;
   c. antiques, fine arts, liquor, or furs;
   d. computer hardware and software;
   e. any property used in **your** or a **relative's** business or employment;
   f. animals (including birds and fish);
   g. **fishing equipment**;
   h. **permanent equipment**; or
   i. **portable boating equipment**.

## <u>EXCLUSIONS</u>—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VIII.

Coverage under this Part VIII does not apply to any loss to **personal effects** or **non-owned personal effects**:
1. while the **covered watercraft** is being used:
   a. to carry persons or property for compensation or a fee;
   b. in any illegal transportation or trade; or
   c. for commercial or business purposes.

34

Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;

2.   resulting from, or sustained during practice or preparation for:
   a.   any pre-arranged or organized:
      (i)    racing;
      (ii)   stunting;
      (iii)  speed or demolition contest or activity; or
   b.   any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.

   This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3.   due to a nuclear reaction or radiation;

4.   for which insurance:
   a.   is afforded under a nuclear energy liability insurance contract; or
   b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5.   caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of the **non-owned personal effects**, even if the actual damage is different than that which was intended or expected;

6.   while the **personal effects** or **non-owned personal effects**, or the **covered watercraft** which they are in or on, are leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply when **you** or a **relative** is using the **personal effects**, **non-owned personal effects**, or the **covered watercraft** which the **personal effects** or **non-owned personal effects** are in or on;

7.   caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of the **non-owned personal effects**. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **non-owned personal effects** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

8.   due to destruction or confiscation by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;

9.   caused directly or indirectly by:
   a.   wear and tear;
   b.   gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, or blistering;
   c.   dock rash or other gradual marring or scratching;
   d.   mechanical, electrical, or structural breakdown, except for subsequent loss by fire or explosion; or
   e.   any design, manufacturing, or latent defect;
      of any **watercraft** or **trailer**.

   This exclusion does not apply:
   a.   if the damage results from the theft of a **covered watercraft**; or

35

    b.   to ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

10.  for diminution of value;

11.  caused directly or indirectly by:
    a.   termites and other insects;
    b.   birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;
    c.   marine life; or
    d.   smog, humidity, mildew, mold, freezing, thawing, or extremes of temperature. This exclusion does not apply to:
    a.   loss resulting from impact with an animal or marine life; or
    b.   ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

12.  caused directly or indirectly by:
    a.   war (declared or undeclared) or civil war;
    b.   warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c.   insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

13.  caused directly or indirectly by:
    a.   any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b.   any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

14.  that occurs because the **covered watercraft** is not in **seaworthy** condition;

15.  arising out of an accident while using a **watercraft** as a primary or permanent residence;

16.  due to theft or conversion of such **personal effects** or **non-owned personal effects**:
    a.   by **you**, a **relative**, or any resident of **your** household; or
    b.   prior to their delivery to **you** or a **relative**; or

17.  that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs.

## LIMITS OF LIABILITY

1.   The limit of liability for loss to **personal effects** and **non-owned personal effects** will be the lowest of:
    a.   the amount necessary to replace the stolen or damaged property;
    b.   the amount necessary to repair the damaged property to its pre-loss condition;
    c.   any applicable limit set forth in subsection 2. or 3. below; or
    d.   the amount shown on the **declarations page** for Replacement Cost Personal Effects Coverage.

36

The limit of liability for loss to part of a pair, set or series of objects, pieces, or panels is the lowest of:

   a. the cost to repair or replace the part that restores the pair, set, or series to its pre-loss condition; or

   b. the cost of a substitute part that reasonably matches the remainder of the pair, set, or series.

**We** have no obligation to repair or replace the entire pair, set, or series if only a portion is lost or damaged.

2. The limit for the combined loss to all **non-owned personal effects** in any one loss is the aggregate of $500.

3. The limit for loss to any one item of **personal effects** in any one loss is $1,000.

4. Payments for loss covered under this Part VIII are subject to the following provisions:

   a. in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

      (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

         (a) original manufacturer parts or equipment; and

         (b) nonoriginal manufacturer parts or equipment; and

   b. duplicate recovery under this policy for the same elements of loss is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:

1. pay for the loss in money; or

2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part VIII will not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

The insurance that **we** provide under this Part VIII for **personal effects** is primary. However, any insurance that **we** provide for a loss to **non-owned personal effects**

37

shall apply as excess coverage over any other collectible source of recovery including, but not limited to, any coverage provided by homeowners, renters, or tenants insurance.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART IX—FISHING EQUIPMENT COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to **fishing equipment**.

No coverage is provided for theft of **fishing equipment** from any location other than a **watercraft** unless such equipment is stolen from a locked compartment, a locked vehicle or **your** locked residence, the theft is supported by visible evidence of forcible entry, and the insured person, or someone on his or her behalf, reports the theft to the United States Coast Guard, the police, or other civil authority within 24 hours or as soon as practicable after the loss.

### ADDITIONAL DEFINITIONS

When used in this Part IX:
1. "**Fishing equipment**" means any sport fishing gear and equipment owned by **you** or a **relative** that is used in the legal taking of fish for sport and recreation, or for personal consumption, including, but not limited to, rods, reels, lures, lines, and tackle boxes. "**Fishing equipment**" does not include **permanent equipment**, **portable boating equipment**, or **personal effects**.
2. "**Personal effects**" means clothing and other personal property owned by **you** or a **relative**. "**Personal effects**" does not include:
   a. money, traveler's checks, securities, evidence of debt, or valuable papers or documents;

38

b.  jewelry, gems, precious stones, watches, silver, gold, or other precious metals;

c.  antiques, fine arts, liquor, or furs;

d.  computer hardware and software;

e.  any property used in **your** or a **relative's** business or employment;

f.  animals (including birds and fish);

g.  **fishing equipment**;

h.  **permanent equipment**; or

i.  **portable boating equipment**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IX.**

Coverage under this Part IX does not apply to any loss to **fishing equipment**:

1.  while the **covered watercraft** is being used:
    a.  to carry persons or property for compensation or a fee;
    b.  in any illegal transportation or trade; or
    c.  for commercial or business purposes.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;

2.  resulting from, or sustained during practice or preparation for:
    a.  any pre-arranged or organized:
        (i)   racing;
        (ii)  stunting;
        (iii) speed or demolition contest or activity; or
    b.  any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
    This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3.  due to a nuclear reaction or radiation;

4.  for which insurance:
    a.  is afforded under a nuclear energy liability insurance contract; or
    b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5.  caused by an intentional act committed by or at the direction of **you** or a **relative**, even if the actual damage is different than that which was intended or expected;

6.  while the **fishing equipment** or the **covered watercraft** which the **fishing equipment** is in or on is leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply when **you** or a **relative** is using the **fishing equipment** or the **covered watercraft** which the **fishing equipment** is in or on;

7.  caused by, or reasonably expected to result from, a criminal act or omission of **you** or a **relative**. This exclusion applies regardless of whether **you** or the **rela-**

39

**tive** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

8. due to destruction or confiscation by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;
9. caused directly or indirectly by:
   a. wear and tear;
   b. gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, delamination, or blistering;
   c. dock rash or other gradual marring or scratching;
   d. mechanical, electrical, or structural breakdown, except for subsequent loss by fire or explosion; or
   e. any design, manufacturing, or latent defect;
      of any **watercraft** or **trailer**.
   This exclusion does not apply:
   a. if the loss results from the theft of a **covered watercraft**; or
   b. to ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;
10. for diminution of value;
11. caused directly or indirectly by:
    a. termites and other insects;
    b. birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;
    c. marine life; or
    d. smog, humidity, mildew, mold, freezing, thawing, or extremes of temperature.
    This exclusion does not apply to:
    a. loss resulting from impact with an animal or marine life; or
    b. ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;
12. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;
13. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;
14. that occurs because the **covered watercraft** is not in **seaworthy** condition;
15. arising out of an accident while using a **watercraft** as a primary or permanent residence;
16. due to theft or conversion of such **fishing equipment**:
    a. by **you**, a **relative**, or any resident of **your** household; or
    b. prior to its delivery to **you** or a **relative**; or

40

17. that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs.

## LIMITS OF LIABILITY

1. **Our** limit of liability under this Part IX for loss to **fishing equipment** will be the lowest of:
   a. the amount necessary to replace the stolen or damaged property;
   b. the amount necessary to repair the damaged property to its pre-loss condition; or
   c. the amount shown on the **declarations page** for Fishing Equipment Coverage.

   However, the most **we** will pay for loss or damage to any one item of **fishing equipment** is $1,000. A tackle box or any other container used to store lures, hooks, and baits is considered one item regardless of the number of lures, hooks, baits, and other items stored in the container. A rod and reel are considered two separate items.

2. Payments for loss covered under Fishing Equipment Coverage are subject to the following provisions:
   a. in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i) shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:
         (a) original manufacturer parts or equipment; and
         (b) nonoriginal manufacturer parts or equipment; and
   b. duplicate recovery under this policy for the same elements of loss is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:
1. pay for the loss in money; or
2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IX will not directly or indirectly benefit any carrier or other bailee for hire.

41

**OTHER SOURCES OF RECOVERY**

The insurance that **we** provide under this Part IX for **fishing equipment** is primary.

**APPRAISAL**

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

<u>**PART X—DUTIES IN CASE OF AN ACCIDENT OR LOSS**</u>

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the manufacturer's or state-assigned hull identification number of the **watercraft** involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a **watercraft** involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police, United States Coast Guard, or other civil authority, in accordance with applicable laws and regulations, within 24 hours or as soon as practicable.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;

42

5. attend hearings and trials as **we** require;

6. take reasonable steps after a loss to protect the **covered watercraft**, or any other **watercraft** or **trailer** for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;

7. allow **us** to have the damaged **covered watercraft**, or any other damaged **watercraft** or **trailer** for which coverage is sought, inspected and appraised before its repair or disposal;

8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and

9. authorize **us** to obtain medical and other records.

### PART XI—GENERAL PROVISIONS

**POLICY PERIOD AND TERRITORY**

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and which occur within:

1. a state, territory, or possession of the United States of America, or a province or territory of Canada, including their in-land lakes, rivers, and navigable waterways;

2. the Great Lakes; or

3. ocean waters 75 nautical miles or less from the coast of either the United States or Canada, but not including the territory or territorial waters of any country other than the United States or Canada.

**CHANGES**

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a **relative** obtaining a driver's license or operator's permit, or changes in:

1. the number, type or use classification of **covered watercraft**;

2. the persons who regularly operate a **covered watercraft**;

3. the persons of legal driving age residing in **your** household;

43

4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered watercraft**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a **watercraft** from this policy, no coverage will apply to that **watercraft** as of the date and time **you** ask **us** to delete it.

If **you** make a change to **your** policy that results in a decrease in premium, **we** have the right to apply any unearned premium to the balance owed on **your** policy.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered watercraft**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered watercraft**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you** or a **relative**.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## DEDUCTIBLES

A deductible shall apply to a covered loss for all coverages as indicated on the **declarations page**. No more than one deductible per **covered watercraft** will be applied to any one covered loss under this policy. If two or more deductibles apply to any one covered loss in any combination of Part IV—Damage To A Watercraft, Part VII—Propulsion Plus Coverage, Part VIII—Replacement Cost Personal Effects Coverage

44

and/or Part IX—Fishing Equipment Coverage in the policy, the highest deductible as shown on the **declarations page** will apply for the coverages found in those sections and involved in the settlement of the loss. The deductible for any covered loss for which coverage is afforded under this policy will only be applicable for that specific coverage and will be applied against the limit of liability for that specific coverage. No deductible shall apply to Pet Injury Coverage in Part IV—Damage To A Watercraft.

If Disappearing Deductibles is shown on the **declarations page**, and if, during any policy period, **you** do not have a loss under Collision Coverage or Comprehensive Coverage for which **we** have paid any amount, then:

1. any deductible for Collision Coverage and Comprehensive Coverage for a **watercraft** for which the **declarations page** shows Disappearing Deductibles shall be reduced for the following policy period by 25 percent of the original deductible amount; and

2. no deductible for Collision Coverage and Comprehensive Coverage will apply for the fifth policy period and thereafter if **you** do not have any losses during the previous four consecutive policy periods.

If **you** have a loss at any time for which **we** make a payment under Collision Coverage or Comprehensive Coverage for any **watercraft**, then the most recent elected deductible for Collision Coverage and Comprehensive Coverage will be restored for the subsequent policy period. Thereafter, the deductible may again be reduced if the conditions set forth above are satisfied.

Reductions and increases in the deductible under this provision shall apply to all **watercraft** for which Disappearing Deductibles is shown on the **declarations page**.

The provisions in this policy regarding Disappearing Deductibles will reduce or eliminate the deductible for loss to a **covered watercraft** only if the **declarations page** shows Disappearing Deductibles for that **covered watercraft**.

The designated specific coverage type deductible shown on the **declarations page** shall be reduced for the following policy period by 25 percent of its original deductible amount, unless it is triggered to reset to its original amount. A deductible cannot be reduced below zero.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform with the statutes of the state listed on **your** application as **your** principal place of garaging, docking, or mooring **your** **covered watercraft**, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** principal place of garaging, docking, or mooring **your covered watercraft**.

45

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## YOUR WARRANTIES TO US REGARDING YOUR COVERED WATERCRAFT

**You** warrant and represent to **us** that, at the inception of this policy, **your covered watercraft** is in **seaworthy** condition. Violation of this warranty will void this policy from its inception.

**You** further warrant and represent to **us** that **you** will continue to maintain **your covered watercraft** in **seaworthy** condition and to comply with all federal safety standards and provisions. This policy does not cover any loss or damages caused by **your** failure to maintain **your covered watercraft** in **seaworthy** condition or to comply with all federal safety standards and provisions.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
1.  made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  concealed or misrepresented any material fact or circumstance; or
3.  engaged in fraudulent conduct;
at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered. However, if **we** make a payment, the insured person must reimburse **us**.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1.  make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  conceal or misrepresent any material fact or circumstance; or
3.  engage in fraudulent conduct;
in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss. However, if **we** make a payment, the insured person must reimburse **us**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with

46

any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1. **we** cancel during the first 59 days of the initial policy period; or
2. this policy is cancelled for nonpayment of premium.

**We** will give at least 20 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;

47

2.  conviction of the named insured of a crime having as one of its necessary elements an act increasing the hazard against;
3.  material misrepresentation or fraud by **you** with respect to any material fact in the procurement or renewal of this policy;
4.  material misrepresentation or fraud in the submission of any claim under this policy;
5.  grossly negligent acts or omissions by **you** which substantially increase the hazard insured against;
6.  physical change in the insured property which results in the property becoming uninsurable; or
7.  any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all **watercraft** and **trailers**.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If cancellation is at **your** request, or if cancellation is for nonpayment of premium, any refund due will be computed on a 90 percent of a daily pro rata basis. This is an accelerated method of calculating earned premium on cancellations. For all other cancellations, any refund due will be computed on a daily pro rata basis.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 45 days before the end of the policy period.

## AUTOMATIC TERMINATION

1.  This policy will terminate if **you** fail to accept the renewal offer.

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

2.  This policy will terminate if **you** obtain other insurance on a **covered watercraft**.

48

If **you** obtain other insurance on a **covered watercraft**, any similar insurance provided by this policy will terminate as to that **covered watercraft** on the effective date of the other insurance. Similar insurance means a coverage that is shown on the **declarations page**, regardless of whether the limits or deductibles on this policy and the other insurance are the same.

If a **covered watercraft** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered watercraft** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to payment, reimbursement and subrogation as provided in this section regardless of whether the total amount of the recovery of the insured person on account of the injury is less than the actual loss suffered by the insured person. Such rights of recovery apply to the extent of **our** payment. The insured person assigns and transfers to **us** all rights, claims, demands and interest which that insured person may have against any party through the occurrence of a loss and authorizes **us** to sue, compromise, or settle in the insured person's name all such claims and to execute and sign releases and acquaintances in the insured person's name. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

Subject to the terms of the preceding paragraph, when an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

49

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and **property damage** claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## OUR RIGHTS TO INSPECT

**We**, and any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf, have the right to:
1. make inspections and surveys after providing **you** with reasonable notice;
2. provide **you** reports related to any conditions that **we** identify with respect to a **covered watercraft** or any property; and
3. recommend changes with respect to any identified conditions.

This does not mean that **we** or any entity acting on **our** behalf:
1. make safety inspections;
2. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;
3. warrant or represent that conditions are safe or healthful;
4. warrant or represent that conditions comply with laws, regulations, codes, or standards; or
5. warrant or represent that a **covered watercraft** is in **seaworthy** condition.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy. If execution of a judgment against an insured person is

50

returned unsatisfied because of the bankruptcy or insolvency of an insured person, a person claiming damages under Part I—Liability To Others may maintain an action against **us** for the amount of the judgment, subject to the terms and conditions of this policy and not exceeding **our** Limits of Liability under Part I.

51





2749 CA 0219

# Exhibit B





-------------- 2601 S. Yale Street Santa Ana, CA 92704 (949) 456-9935 --------------

## Engine Survey

| | | | |
|---|---|---|---|
| Customer Name FRANK MARQUEZ | | W/O Number 52065 | Date 5-19-21 |
| Boat Make and Model STRiPER | Length (ft) 29 | Hull Number G3STC0228606 | |
| Engine Model D4-225A·B | Serial Number Port. (Single) 200400 6076 | | Stb. 2004006077 |
| Transmission Make Volvo Penta | Model DPH·A | | Ratio 1.96 |
| Serial # Port (Single) 3102246059 | V Drive | Stb. 3102246060 | V Drive |

### 1./ Compression test

**PORT**

| Cyl. # | Dry (PSI) | Wet (PSI) | L / D (%) |
|---|---|---|---|
| 1 | ✓ | | |
| 2 | ✓ | | |
| 3 | ✓ | | |
| 4 | ✓ | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |

**STARBOARD**

| Cyl.# | Dry (PSI) | Wet (PSI) | L / D (%) |
|---|---|---|---|
| 1 | ✓ | | |
| 2 | ✓ | | |
| 3 | ✓ | | |
| 4 | ✓ | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |

### 2./ Engine condition

| | New | Good | Fair | Poor | | New | Good | Fair | Poor |
|---|---|---|---|---|---|---|---|---|---|
| Hoses F / W | | | ✓ | | | | | ✓ | |
| Hoses S /W | | | ✓ | | | | | | |
| Belts | | ✓ | | | | | ✓ | | |
| Clamps | | | ✓ | | | | | ✓ | |
| Control Cables | | | ✓ | | | | | ✓ | |
| Electrical Wiring | | | ✓ | | | | | ✓ | |
| Oil Lines | | | ✓ | | | | | ✓ | |
| Appearance | | | ✓ | | | | | ✓ | |

### 3./ With engine running at 2000 RPM, check all gauges for proper operation

| Gauges | Temp. (F) | Oil (PSI) | Volt | Tachometer | Engine Hours |
|---|---|---|---|---|---|
| PORT | 185 | 50 | 14.4 | 2000 | 490. |
| STB. | 185 | 50 | 14.4 | 2000 | 494. |

### 4./ Sea trial

| | Crouse at 90% RPM | | | | | Wide open throttle | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | RPM | Speed | Boost | Oil pres. | Temp. | RPM | Speed | Boost | Oil pres. | Temp. |
| Port engine | 3000 | 22 | — | 60 | 185 | 3600 | 27 | — | 70 | 185 |
| Stb. Engine | 3000 | 22 | — | 60 | 185 | 3600 | 27 | — | 70 | 185 |

SEE OTHER SIDE

Rev. Apr/03/08 1.1

PAGE 2

**5./ Fluid leaks**

Engine Oil

| | Yes | No | |
|---|---|---|---|
| Port | | ✔ | no visible leaks   (oil in bilge) |
| Stb. | | ✔ | no visible leaks   (oil in bilge) |

Transmission Oil

| | Yes | No | |
|---|---|---|---|
| Port | ✔ | | no visible leaks |
| Stb. | ✔ | | no visible leaks |

Raw Water

| | Yes | No | |
|---|---|---|---|
| Port | ✔ | | no visible leaks |
| Stb. | ✔ | | no visible leaks |

Coolant

| | Yes | No | |
|---|---|---|---|
| Port | ✔ | | no visible leaks |
| Stb. | ✔ | | no visible leaks |

**6./ Fluid level and condition**

| | Level | Replace | NOTES: |
|---|---|---|---|
| Engine oil port | full | no | Recently Replaced |
| Engine oil stb | full | no | Recently Replaced |
| Trans oil port | full | yes | Recommend Replace |
| Trans oil stb | full | yes | Recommend Replace |
| Coolant port | full | yes | Recommend Replace Due to age |
| Coolant stb | full | yes | Recommend Replace Due to age |

**7./ Closing comments**

Both oil pans have been Replaced
Both exh. Down pipes have been Replaced
Little oil in bilge (cant see where it comes from)
stbd. had a no-start issue - Low Voltage -
Recommend clean all batt. terminals and cables
Recommend load test batts. Date on batts 8/20
Both engines start Right up - no smoke
Both engines run-smooth - no unusual noises - no codes
Recommend cooling system service
overall condition very Good
Recommend replace plastic pulleys with steel

Surveyors NAME: Lance   Arsenault   Signature: Lance Arsenault

Rev. Apr/03/08 1.1



*Kozwel Boatworks*

-------------- 2601 S. Yale Street Santa Ana, CA 92704 (949) 456-9935 ---------------

## GENSET SURVEY

| | |
|---|---|
| Customer Name **Frank Morquez** | W/O Number **52065**  Date **5-19-21** |
| Genset Make and Model **Kohler  5E0Z** | Serial No. **2062498** |
| Engine Make **Yanmar**  Model No. **not legible** | Ser. No. **not legible** |

### 1./ Compression test

| Cyl.# | DRY | WET | L/D (%) |
|---|---|---|---|
| 1 | ✔ | | |
| 2 | ✔ | | |
| 3 | ✔ | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |

### 2./ Genset condition

| | New | Good | Fair | Poor | Bad |
|---|---|---|---|---|---|
| Hoses F / W | | ✔ | | | |
| Hoses S /W | | ✔ | | | |
| Belts | | | ✔ | | |
| Clamps | | ✔ | | | |
| Control Cables | | ✔ | | | |
| Electrical Wiring | | ✔ | | | |
| Oil Lines | | ✔ | | | |
| Appearance | | ✔ | | | |

NOTES:
Very clean . Low hours

### 3./ Fluid leaks, level & condition

| | Leak | Level | Replace | NOTES: |
|---|---|---|---|---|
| Engine oil | No | full | YES | Recommend Replace |
| Coolant | No | full | YES | Recommend Replace |
| Raw water | No | Recommend impeller change | | |

### 4./ With Genset running under load, check all gauges for proper operation

| Gauges | Temp. (F) | Oil (PSI) | Volt DC | Volt AC | Engine Hours |
|---|---|---|---|---|---|
| 50% load | — | — | 13.5 | 120 | 164 |
| 100% load | — | — | 13.5 | 120 | |

### 5./ Closing comments

Last oil change 6-24-15   53 hrs
Last impeller change  2-13-12  18.7 hrs.
Recommend cooling system service
Recommend fluid service
Recommend exh. elbow inspection
overall condition excellent

Surveyors NAME: **Lance Arsonault**  Signature: *Lance Arsonault*

Rev. Apr/03/08/1.1

**Howe Decl., Exhibit 1**
**Page 071**

# Exhibit C

# *PACIFIC MARINE SURVEYORS* Est. 1965

## CONDITION ⚓ CLAIMS ⚓ INSURANCE ⚓ CONSULTING

*Serving the Boating Community for Over 50 Years*

RICK GORMAN & DANIEL GORMAN
6475 E Pacific Coast Hwy #222
Long Beach, CA 90803
714.746.7380
pacificmarinesurveyors@gmail.com

### MARINE SURVEY REPORT

#### "Fin Chaser II"
#### 2006 Sea Swirl 2901 Striper



**File Number 8670-DG**

**Prepared for Frank Marquez**

**May 19, 2021**

Vessel: "Fin Chaser II"                                    File # 8670-DG
May 19, 2021
Page 2 of 14

## TABLE OF CONTENTS:

| | |
|---|---|
| Scope of Survey | Page 3 |
| Vessel Identification | 4 |
| Hull & Deck | 4 |
| Shipboard Amenities | 4-5 |
| Electronic Equipment | 5 |
| Safety Equipment | 5 |
| Electrical Systems | 5 |
| Propulsion & Machinery | 6 |
| Tanks & Systems | 6 |
| Thru-Hulls | 6 |
| Miscellaneous Equipment | 6 |
| Findings & Recommendations | 7 |
| Statement of Overall Condition | 8 |
| Statement of Valuation | 9 |
| Limitations & Conditions | 10-11 |
| Surveyor's Certification | 11 |

**NOTE:**  Photos taken at the time of survey are included as part of this report.

**NOTE:**  For all items marked with an asterisk (*), see FINDINGS & RECOMMENDATIONS section of this report.

Vessel: "Fin Chaser II"                                                    File # 8670-DG
May 19, 2021
Page 3 of 14

**SCOPE OF SURVEY:** On May 19, 2021, Pacific Marine Surveyors ("PMS") surveyed the vessel identified below while hauled from the water at the Marina Shipyard in Long Beach, California to determine, without prejudice, *the current condition and estimated market value for pre-purchase*. Inspecting all internal and external portions of the vessel that were visible without removing obstructions or operating machinery, we found the vessel as indicated in our Findings and Recommendations section of this Report.

The vessel "Fin Chaser II", bearing U.S. Document No. 1269471 and Hull Identification No. (HIN) GSSTC022B606, was designed and built by Sea Swirl/Striper Boats of Little Falls, Minnesota of FRP (Fiberglass) in 2006. The vessel is a diesel powered, cuddy cabin vessel known as a *Sea Swirl 2901 Striper*.

The hull construction is from a female mold, hand laid up, using appropriate layers of matte, cloth and woven roving with resin. There is a gel coat finish on the exterior portions of the vessel. The deck and superstructure are of the same type of construction; however, the deck has a nonskid pattern on the walking surface and is cored. There are transverse bulkheads, intermittent framing and longitudinal stringers along with a deck-to-hull joint that gives the vessel its rigidity and stiffness.

The operations center is located on the forward, starboard side of the cockpit, with adequate navigational aids and engine-monitoring instrumentation. The area is protected with an aluminum and tempered glass windshield, and an FRP hard top with aluminum supports and an Isinglass enclosure.

Boarding the vessel over the FRP swim platform and stepping through the transom gate, puts you into the aft cockpit. There are fish boxes on both the port and starboard sides, and there is a bait tank in the center of the cockpit. There is also a seat up against the transom bulkhead. This whole area lifts up, allowing access to the two (2) main engines and batteries.

Continuing forward in the cockpit takes you to the helm area, with a pilot seat and companion seat. The windshield opens up, allowing access to the bow.

From the cockpit, going down a set of stairs takes you to the main living quarters. Immediately to starboard is an enclosed marine toilet with shower. The galley is on the port side, running fore and aft. Up forward, in the "V" of the hull, is a seating area that converts into a double berth. Aft, under the cockpit, is another berth which runs athwartships. Beneath this berth is the location of the water tank. Aft of this there is access to the generator and other storage areas. Throughout the vessel there are various hanging lockers, cabinets, drawers and other storage areas.

This vessel has been well maintained and would be considered a good example of a *Sea Swirl 2901 Striper*.

Vessel: "Fin Chaser II"                                                    File # 8670-DG
May 19, 2021
Page 4 of 14

**DATE**  *May 19, 2021*                                          **FILE NO.**  *8670-DG*

**SURVEYED FOR...**  *Frank Marquez*
**PHONE**  *619.520.3350*   **EMAIL**  *frankmarquez@cox.net*

**VESSEL NAME**  *"Fin Chaser II"*
**BUILT BY**  *Sea Swirl*   **LOCATION**  *Little Falls, MN*   **YEAR**  *2006*   **MODEL**  *2901 Striper*
**HIN #**  *GSSTC022B606*   **REGISTRATION**  *U.S. Doc. # 1269471*
**SURVEY LOCATION**  *Long Beach, CA (Marina Shipyard)*   **PRESENT AT SURVEY**  *Frank Marquez*


## HULL & DECK

**LOA**  *29'*   **BEAM**  *10' 5"*   **DRAFT**  *2' 7"*   *(Reported Dimensions)*
**HULL TYPE**  *Hard Chine, Modified-Vee w/ Raked Bow*
**HULL MATERIAL**  *FRP*   **FASTENERS**  *Stainless Steel*
**FRAMES & BEAMS**  *Bulkheads*   **SPACING**  *Intermittent*
**DECKING**  *Nonskid FRP*   **WINDOWS & PORTS**  *Four (4)*   **DECK-TO-HULL JOINT**  *Slip Flange*
**ANCHOR WINDLASS**  *Lofrans w/ Up & Down Controls*
**GROUND TACKLE**  *Plow Type Anchor w/ Galvanized Chain & Nylon Rode*
**SAFETY RAIL**  *Stainless Steel Stanchions w/ Double Wire*
**COMPASS/ES**  *Ritchie 3" Spherical Magnetic*
**DECK EQUIPMENT:**
*Stainless Steel Bow Pulpit, Stainless Steel Hand Rail, Anchor Roller, Vinyl Rub Rail, Stainless Steel Safety Stanchions, One (1) Cabin Top Hatch, FRP Bow Plank, Miscellaneous Mooring Equipment, FRP Swim Platform, Ten (10) Rod Holders (Storage), Four (4) Rod Holders (Trolling), Bait Tank, Aluminum Outriggers.*
**COCKPIT:**
*Scuppers, Cockpit Shower, Foam & Vinyl Bolster, Transom Gate, Stereo Speakers, Floodlights, Bait Tank, Tackle Storage, Raw Water Wash-Down.*
**HELM AREA:**
*Aluminum & Tempered Glass Windshield, Speakers, One (1) Pilot Seat, One (1) Companion Seat, Trim Tab Controls, Stainless Steel Helm, FRP Hard Top w/ Aluminum Supports & Isinglass Enclosure.*


## SHIPBOARD AMENITIES

**OPERATED FROM**  *Helm in Cockpit*
**CABINS/SECTIONS**  *One (1) Main, One (1) Aft, One (1) Enclosed Marine Toilet*
**SLEEPING ACCOMMODATIONS FOR**  *Four (4)*
**STOVE**  *Single-Burner (no oven)*   **STOVE FUEL**  *Electric & Alcohol*   **MICROWAVE OVEN**  *Yes*
**SINK**  *Single FRP*   **SINKBOARD AREA**  *Approx. 6 Sq. Ft.*   **MATERIAL**  *FRP*
**REFRIGERATOR/FREEZER**  *Approx. 3 Cubic Ft.*
**MARINE TOILET/S**  *One (1) Vacu-Flush w/ Holding Tank*
**SHOWER/S**  *One (1) w/ FRP Base & Hand-Held Shower*
**VANITY/IES**  *One (1) w/ FRP Top & FRP Wash Basin*

Vessel: "Fin Chaser II"                                                   File # 8670-DG
May 19, 2021
Page 5 of 14

## SHIPBOARD AMENITIES (Continued)

**INTERIOR:**
*Carpet-Type Overhead, Carpeted Cabin Sole, FRP Hull Liner, DC Lighting, AC Outlets (GFCI Type), Foam & Fabric Cushions.*

## ELECTRONIC EQUIPMENT

### NAVIGATION

**VHF-FM RADIO/S** *ICOM IC-M422*   **CALL LETTERS** *None Posted*
**RADAR/DEPTH INDICATOR/GPS/PLOTTER** *Raymarine C120*   **AUTOPILOT** *Raymarine ST6002*

### ENTERTAINMENT

*AM/FM/CD Stereo.*

## SAFETY EQUIPMENT

### USCG REQUIRED:

**FIRE EXTINGUISHERS:**
*One (1) 2-1/2 lb. Type "ABC" Size I Dry Chemical, One (1) 3 lb. Type "BC" Size I Dry Chemical, NONE ARE CERTIFIED\*.*
**PFDs (LIFE JACKETS)** *Six (6) Type II*   **THROWABLE DEVICE/S** *One (1) Type IV Buoyant Cushion*
**RUNNING LIGHTS** *Electric*   **HORN** *Electric*   **FLARES** *Yes (Expired)\**   **REG. #'S** *No\**   **MSD** *Yes*
**OIL PLACARD** *Yes*   **DUMPING PLACARD** *Yes*   **BLOWER** *N/A*   **FLAME ARRESTER** *N/A*

### OTHER EQUIPMENT

**BELL** *None*   **CO MONITOR** *Yes\* (inoperative)*   **FIRST AID SUPPLIES** *Yes (Kit)*
**BILGE PUMPS** *One (1) Electric (Aft)*   **LIFE RAFT** *Viking 6-Person*

## ELECTRICAL SYSTEMS

**BATTERIES** *Four (4) Medium Amp*   **LOCATION** *Engine Space/Generator Space*
**GENERATOR(S)** *Kohler 5KW w/ 163 Hours (S/N 2062490)*
**VOLTAGE** *12V-DC & 110V-AC*   **MAIN DISCONNECT SWITCH** *Vapor Resistant*
**WIRING** *Low & High Voltage Plastic-Sheathed Nonmetallic*
**SWITCHBOARD LOCATION** *Port Side Galley*   **DC PANEL** *Circuit Breakers*
**AC PANEL:**
*AC Voltmeter, Selection Switch, Reverse Polarity Indicator, Main Breaker, Circuit Breakers, Generator Switches.*
**OTHER:**
*Mastervolt Battery Charger, AC Outlets (GFCI Type), DC Outlets, Two (2) 30-Amp Shore Power Receptacles, Two (2) Galvanic Isolators.*

**NOTE:** *The electrical system appears to be as-designed and built, and appears to be serviceable.*

Vessel: "Fin Chaser II"                                                 File # 8670-DG
May 19, 2021
Page 6 of 14

## PROPULSION & MACHINERY

**MANUFACTURER** *Volvo-Penta*  **MODEL** *D4-225*  **TYPE** *Marine Diesel, Fresh Water Cooled*
**TOTAL HORSE POWER (APPROX.)** *Four Hundred Fifty (450) (2 x 225)*
**SERIAL NUMBERS** *Port 2004006076; Starboard 2004006077*
**AGE OF UNIT OR DATE OF LAST OVERHAUL** *Unknown*
**NOTE:** *SEE SEPARATE ENGINE REPORT.*
**EXHAUST LINES** *Reinforced Hose (Wet)*  **ENGINE SPACE VENTILATION** *Natural*
**ENGINE CONTROLS** *Electric*  **STEERING TYPE** *Hydraulic*
**INSTRUMENTATION:**
*One (1) Knotmeter, Two (2) Trim Meters, Two (2) Tachometers, Two (2) Oil Pressure Gauges,*
*Two (2) Water Temperature Gauges, Two (2) Voltmeters, Two (2) Hour Meters (Port Reads:*
*487.3; Starboard Reads: 490.2).*
**DRIVE LINE** *Outdrives*
**PROPELLER** *Three (3)-Bladed & Four (4)-Bladed Counter-Rotating (per outdrive)*

## TANKS & SYSTEMS

**FUEL SYSTEM** *Tanks built in; could not measure or inspect.*

**NUMBER** *One (1)*  **FILL LOCATION** *Side Deck*  **CAPACITY** *239 Gallons (Rept.)*
**MATERIAL** *Aluminum*  **SHUT OFF** *In Line*  **GROUNDED** *Yes*  **FILTERS** *Racor*
**FUEL LINE SIZE & MATERIAL** *3/8" USCG Type A-1 Rubber*

**WATER SYSTEM** *Tanks built in; could not measure or inspect.*

**NUMBER** *One (1)*  **CAPACITY** *29 Gallons (Rept.)*  **MATERIAL** *Polyethylene*
**WATER LINE SIZE & MATERIAL** *3/8" Plastic Tubing*  **VENTED** *Overboard*
**OTHER:**
*City Potable Water Inlet, Seaward 6-Gallon Water Heater (w/ pressure relief valve discharged*
*over the side), Water Pressure Pump.*

**MSD** *Tanks built in; could not measure or inspect.*

**NUMBER** *One (1)*  **CAPACITY** *11 Gallons (Rept.)*  **MATERIAL** *Unseen*
**OTHER** *Macerator Pump*

## BELOW WATERLINE THRU-HULLS

| FUNCTION | LOCATION | TYPE | CONDITION |
|---|---|---|---|
| Bait Tank | Port Side Aft | Ball | Serviceable |
| Generator Cooling | Stb Side Aft | Ball | Serviceable |

## MISCELLANEOUS

*Fishing Gear, Spare Parts.*

Vessel: "Fin Chaser II"                                                                File # 8670-DG
May 19, 2021
Page 7 of 14

## FINDINGS & RECOMMENDATIONS

*A. Safety items that need to be addressed before the vessel is under way.  These items endanger the vessel and those on board.  These items may also be a violation of USCG Regulations.*

    1.    Provide all U.S. Coast Guard required equipment for vessel type and size.

        a.  Proper display of the document number is required, per 46 CFR 67.45.
        b.  Fire extinguishers are required, per 46 CFR 25.30.  There were fire extinguishers on board; however, they should be inspected and certified annually, per ABYC Standard A-4, Appendix 5.
        c.  Visual distress signals are required, per 33 CFR 175.110.  There were flares on board; however, they have expired.  They should be disposed of properly and replaced with new, current flares.

*B. Items that should be corrected in the near future.*

    1.    Cover the battery terminals, per ABYC Standard E-10.
    2.    There is oil in the bilge.  Clean it up.
    3.    Add fire bowls to the Racor fuel filters.

*C. Surveyor's notes and other observations.*

    1.    The CO monitor is inoperative.
    2.    The porthole screens are ripped.
    3.    There are dings and scratches in the hull.
    4.    The windshield wipers are inoperative.
    5.    The generator oil has not been changed in 100 hours/6 years.
    6.    The belt cover is off the front of the generator.
    7.    There was low voltage at the start of the survey.
    8.    The generator was started, to start the main engines.
    9.    There is minor corrosion on the water heater.
    10.  There are minor water stains by the porthole windows.
    11.  The switch labels are worn off at the helm.
    12.  There is cosmetic crazing in the foam insulation.
    13.  The vents are cracked on the port side of the vessel for the engine intakes.
    14.  The hatches are soft in the cockpit.
    15.  The bait pump hoses have checking.  A lot of the rubber in the engine space has checking.  Investigate and correct.
    16.  Clean up the Racor fuel filters.
    17.  Clean up the fuel tank connections.
    18.  The fish box gaskets are at the end of their serviceable life.
    19.  The bait tank rim is cracked.
    20.  The bolster is falling off the port side.
    21.  The bait tank window is leaking.

Vessel:  "Fin Chaser II"                                                                File # 8670-DG
May 19, 2021
Page 8 of 14

## STATEMENT OF OVERALL CONDITION

The statement or rating of condition is based on a grade developed by BUC RESEARCH, an accepted marine industry standard, after the survey has been completed and the findings have been reviewed and organized.  The following is a list of _our_ modified marine grading system of condition:

| | |
|---|---|
| **EXCELLENT (BRISTOL) CONDITION** | _The vessel is maintained in mint or Bristol fashion; new, to better than new and loaded with extras - a rarity._ |
| **ABOVE AVERAGE CONDITION** | _The vessel has had above average care, and its condition shows it.  All ready for sale, and no work is necessary for sale._ |
| **AVERAGE CONDITION** | _Average condition; ready for sale with a "to do" list of minor items._ |
| **FAIR CONDITION** | _Requires more than the usual maintenance to prepare for sale._ |
| **POOR CONDITION** | _Requires substantial yard work._ |
| **RESTORABLE CONDITION** | _Enough of hull and engine exists to restore the boat to useable condition._ |

**AS A RESULT OF MY SURVEY AND INVESTIGATION, AS REFLECTED IN THE ABOVE SECTIONS OF THIS REPORT, AND BY VIRTUE OF MY KNOWLEDGE AND EXPERIENCE IN THE INDUSTRY, MY OPINION OF THE CONDITION OF THE VESSEL IS AS FOLLOWS:**

| | |
|---|---|
| **HULL COMPOSITION & STRUCTURE:** | _Average_ |
| **PROPULSION & MACHINERY:** | _Average_ |
| **TANKS & SYSTEMS:** | _Average_ |
| **ELECTRICAL SYSTEMS:** | _Average_ **Cover Battery Terminals** |
| **SAFETY EQUIPMENT:** | _Average_ **Provide** |
| **ELECTRONIC EQUIPMENT:** | _Average_ |
| **OVERALL CONDITION OF THIS VESSEL:** | _Average_ |

Vessel: "Fin Chaser II"                                                File # 8670-DG
May 19, 2021
Page 9 of 14

## STATEMENT OF VALUATION

The "Fair Market Value" is the most probable price in terms of money for which the vessel should sell in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, in a well-informed fashion, and unaffected by any special considerations associated with the sale.

Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

> a) Buyer and seller are typically motivated;
> b) Both parties are well-informed and advised, each acting in what they consider their own best interests;
> c) A reasonable time is allowed for exposure in the open market;
> d) Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
> e) The price represents a normal consideration for the vessel sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

The "Estimated Replacement Cost" is the retail cost of a new vessel of the same make and model with similar equipment by the same manufacturer.  If this vessel is no longer in production then the value of a similar vessel with similar equipment is used.

After consideration of available data (sold boats, For Sale listings, N.A.D.A., Buc Book), the reliability of the data, and appropriate adjustments for condition and location of the vessel, it is your professional surveyor's opinion that the Fair Market Value and Estimated Replacement Cost of this vessel are as follows:

**FAIR MARKET VALUE:**  $ 74,000.00

**ESTIMATED REPLACEMENT COST:**  $ 210,000.00

Vessel:  "Fin Chaser II"                                                    File # 8670-DG
May 19, 2021
Page 10 of 14

**LIMITATIONS AND CONDITIONS**

This report of survey is for the benefit of Frank Marquez (or "the party who commissioned this report") only and may not be relied upon by any other person without the express written consent of Pacific Marine Surveyors.

This report of survey represents the condition of the vessel as inspected by Pacific Marine Surveyors on the date of survey.  This report makes no representation and does not purport to describe any condition which may have changed since the date of the survey and the recommendations made herein are limited to those that, in the opinion of Pacific Marine Surveyors, are reasonably necessary and appropriate, based upon the conditions and circumstances as they existed at the time of the survey.

Unless otherwise specifically requested and provided for and noted in the report, this report is founded on an inspection subject to the following listed exceptions:

- If this report does not discuss specific items, equipment or machinery, it is not covered by the survey.
- Permanently mounted bulkheads, ceilings, paneling and other portions of the vessel's structure are not opened.
- Permanently mounted machinery, tanks and equipment are not dismantled to expose portions of the vessel ordinarily concealed.
- Propulsion machinery, auxiliary systems, electrical and electronic circuits and equipment, tanks, tenders, plumbing systems and fittings, miscellaneous equipment, sails and rigging are not analyzed, traced, tested, or opened for internal inspection.
- The internal condition of engines, transmissions and/or generators are not evaluated or inspected.
- Borings and non-destructive test procedures are not conducted to determine thickness or internal condition of structural members.
- No determination of stability characteristics is made and no opinion is expressed.

Included in the assessment of value of the vessel are all things attached to the vessel and which may be presumed to be the property of the owner, including (but not limited to) the hull, machinery, equipment, sails and rigging, tenders, furnishings, and all that is onboard for the purpose of the use of the vessel, excepting only that which, in customary usage, is considered personal property of the owner or crew or which specifically is excepted at the time of the survey.

The services rendered herein and the report furnished herewith are done with the understanding that Pacific Marine Surveyors, its agents, employees, contractors, and owners, are not responsible or liable under any circumstances whatsoever for any error, omission, negligence or failure to properly perform the requested services and that all matters and statements contained in this report are a matter of opinion only.  They are not to be construed as representations, warranties or guarantees as to the condition or safety of the vessel or of any of its individual parts.  No statement made herein or in connection with the services performed hereunder or any work done in connection herewith shall be the basis for any claim, demand or action against Pacific Marine Surveyors, its agents,

Vessel: "Fin Chaser II"                                                    File # 8670-DG
May 19, 2021
Page 11 of 14

employees, contractors, and owners.   In no event shall PMS be liable for incidental and
consequential damages, or damages exceeding the fee actually received for the work.

The mandatory standards promulgated by the United States Coast Guard (USCG), under the
authority of Title 46, United States Code, Title 33 and 46 of the Code of Federal Regulations, and
the voluntary standards and recommended practices developed by the American Boat and Yacht
Council and the National Fire Protection Association have been used as guidelines in the conduct
of this survey.  Use of this survey report constitutes acceptance of the established and customary
conditions and limitations described above.    The survey report is made in good faith, without
prejudice, and founded on the facts discovered and presented at the time of survey.

## SURVEYOR'S CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported
  assumptions and limiting conditions, and are my personal, unbiased professional analyses,
  opinions and conclusions.
- I have no present or prospective interest in the vessel that is the subject of this report, and I
  have no personal interest or bias with respect to the parties involved.
- My compensation is not contingent upon the reporting of a predetermined value or direction
  in value that favors the cause of the client, the amount of the value estimate, the attainment
  of a stipulate result, or the occurrence of a subsequent event.
- I have made a personal inspection of the vessel that is the subject of this report.

This report is submitted without prejudice and for the benefit of whom it may concern.

Fifteen (15) photographs taken at the time of survey including a photo of the hull identification
number (HIN) are included as part of this report.

Thank you for this assignment.  If we may be of further service, please give us a call.

Sincerely,

**PACIFIC MARINE SURVEYORS**

By: _____          Reviewed By: _____

      **DANIEL GORMAN, SA**                              **RICK GORMAN, AMS**

/ra

Vessel:  "Fin Chaser II"
May 19, 2021
Page 12 of 14

File # 8670-DG








Vessel:  "Fin Chaser II"                                      File # 8670-DG
May 19, 2021
Page 13 of 14








Vessel:  "Fin Chaser II"
May 19, 2021
Page 14 of 14

File # 8670-DG

 



**California Secretary of State**
Electronic Filing

# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | PROGRESSIVE DIRECT INSURANCE COMPANY |
| Entity (File) Number: | C2207238 |
| File Date: | 02/04/2022 |
| Entity Type: | Corporation |
| Jurisdiction: | OHIO |
| Document ID: | H197193 |

**Detailed Filing Information**

1. Entity Name:

    PROGRESSIVE DIRECT INSURANCE COMPANY

2. Business Addresses:

    a. Street Address of Principal Office in California:

    b. Mailing Address:

    6300 Wilson Mills Road
    Mayfield Village, Ohio 44143
    United States of America

    c. Street Address of Principal Executive Office:

    6300 Wilson Mills Road
    Mayfield Village, Ohio 44143
    United States of America

3. Officers:

    a. Chief Executive Officer:

    Scott W Ziegler
    6300 Wilson Mills Road
    Mayfield Village, Ohio 44143
    United States of America

    b. Secretary:

    Michael R. Uth
    6300 Wilson Mills Road
    Mayfield Village, Ohio 44143
    United States of America

Document ID: H197193

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:

Daniel  P.  Witalec
6300 Wilson Mills Road
Mayfield Village, Ohio 44143
United States of America

4.  Director:

**Not Applicable**

Number of Vacancies on the Board of Directors:

**Not Applicable**

5.  Agent for Service of Process:

**C T CORPORATION SYSTEM**

**(C0168406)**

6.  Type of Business:

**Insurance Company**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:  Kris Crews

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: H197193

**California Department of Insurance**
Insurance questions? Call 800-927-4357

## Company Profile

Reset
Company Profile
Search

## Company Complaints

Company Performance          Enforcement Actions          Consumer Complaint
& Comparison Data                                          Study

## Workers' Compensation

Workers' Compensation
Complaint & Requests
for Action/Appeals
Contact Information

## Additional Information

View
Financial Disclaimer

| Company Profile Search | Lines of Insurance Search | Other Insurance Entities |
| --- | --- | --- |

## Company Profile

PROGRESSIVE DIRECT INSURANCE COMPANY

6300 Wilson Mills Rd # W33, Mayfield Village, OH 44143-2109

800-776-4737

Show All    Name History    Agent for Service    Reference Information    Lines of Business    Financial Sta

## Name History

| Legal Name | Name Status | Effective Date |
|---|---|---|
| PROGRESSIVE DIRECT INSURANCE COMPANY | Current | 07/20/2006 |
| PROGRESSIVE HALCYON INSURANCE COMPANY | Old | 02/21/2002 |
| HALCYON INSURANCE COMPANY | Old | |

## Agent for Service

| Full Name | Attn Or C/O | Full Address | Contact Phone | Effective From Date |
|---|---|---|---|---|
| AMANDA GARCIA | C T Corporation System | 330 N Brand Blvd Ste 700, Glendale, CA 91203 | 213-337-4615 | 09/28/2021 |

## Reference Information

### Identification

| | |
|---|---|
| Company ID (EID) | 61301 |
| CA # | 4660-7 |
| NAIC | 16322 |
| NAIC Group | 155 |
| NAIC Group Name | PROGRESSIVE GRP |



## Classification

| | |
|---|---|
| Category | Insurer |
| Category Type | Property & Casualty |
| Status | Unlimited-Normal |
| License Category | Admitted |

## Location

| | |
|---|---|
| State Name | Ohio |
| Origin | Foreign |
| Country | - |
| Form | Stock |

## Lines of Business

The company is authorized to transact business within these lines of insurance. For an explanation of any of these terms, please refer to the glossary.



| Lines of Business |
|---|
| Liability |
| Team And Vehicle |
| Automobile |
| Marine |

## Financial Statements

* Year



**California Department of Insurance Disclaimer**

The Annual and Quarterly Financial Statements are submitted to the California Department of Insurance ("CDI") pursuant to California Insurance Code Sections 900 and 931 and California Code of Regulations Section 2308.1. The information is furnished to the CDI by California admitted insurers and is provided to the public "AS IS" pursuant to California Insurance Code Section 12921.2.

The CDI does not guarantee the truth, accuracy, adequacy or completeness of the data contained in the insurers' Annual and Quarterly Financial Statements and expressly disclaims any liability for any errors, omissions, or the result obtained from the use of such data.

Individuals who are unable to access the Annual and Quarterly Financial Statements may contact the CDI at CustodianofRecords@insurance.ca.gov for additional information.



Privacy Policy    ADA Compliance    Site Map    Employment Opportunities    Internships

Free Document Readers    Scheduled Site Maintenance

Copyright © California Department of Insurance



PROCOPIO
525 B Street
Suite 2200
San Diego, CA 92101
T. 619.238.1900
F. 619.235.0398

EDWARD C. WALTON
P. 619.515.3222
ed.walton@procopio.com

DEL MAR HEIGHTS
LAS VEGAS
ORANGE COUNTY
PHOENIX
SAN DIEGO
SILICON VALLEY

January 7, 2022

**VIA E-MAIL (A053006@PROGRESSIVE.COM)**
**VIA EXPRESS MAIL**
Carrie A. Rockwell
Multi-Line Claims Representative
Progressive Direct Insurance Company
Claims Office
2860 North Main Street
Suite 150
Walnut Creek, CA 94597

Re:     Policy Holder: Marquez, Francisco J.
        Claim No.  214379220
        Date of Loss:  October 11, 2021 (per Progressive)

Dear Ms. Rockwell:

We are attorneys for Francisco Marquez regarding his claim for insurance coverage based on damages caused by a covered and non-excluded risk under the policy Progressive issued to Mr. Marquez (the "Claim"). We write in response to your letter of October 6, 2021 to Mr. Marquez, denying the Claim on the purported basis there is "no coverage". In summary, we contend there is coverage and demand that Progressive respond accordingly.

Background Facts

Progressive issued Mr. Marquez its California Boat and Personal Watercraft Policy number 949320135 (the "Policy") effective May 21, 2021-2022 to cover his newly-acquired 2006 29-foot Sea Swirl walk-around, Official Number 1269471, with twin turbo diesel engines (the "Boat"), and his use of the Boat. Mr. Marquez has timely paid the premiums for the Policy.

Mr. Marquez had thoroughly vetted his intended purchase with experts conducting (1) a general marine survey accomplished by Pacific Marine Surveyors on May 19, 2021 ("PMS Survey"), and (2) an engines survey accomplished by Kozwell Boatworks, also on May 19, 2021 ("Kozwell Survey"). Neither the PMS Survey nor the Kozwell Survey found any issues with the Boat such as those caused by the loss which is the subject of the Claim. Specifically, the PMS Survey found no

**procopio.com**

131051-00000001/5641520.2

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT



structural issues, such as the separation at hull and rubrail starboard aft, which now indisputably exists. We understand that you and/or your expert have been provided copies of these surveys, although they are not acknowledged in your denial letter.

Mr. Marquez regularly used the Boat after acquiring it. On September 28, 2021, Mr. Marquez was maneuvering his Boat near a dock in a way that inadvertently allowed the starboard stern area of the Boat to collide with the dock (the "Incident"). Mr. Marquez could see no apparent damage to the Boat after the Incident in the outboard starboard stern area that did not pre-exist the Incident. Mr. Marquez continued to use his Boat until October 4, 2021, while he was out at sea off San Diego enjoying the boat with family members and friends, alarms went off on both engines. Mr. Marquez prudently shut the engines down and called for a tow back to his home marina in Chula Vista. On October 6, 2021, Mr. Marquez took the Boat to Cogswell Marine ("Cogswell") in Chula Vista for inspection and repair.

<u>Cogswell Inspection</u>

Cogswell removed both engines from the engine space in order to facilitate the inspection. Cogswell found an unusual concentration of salt and corrosion particularly to starboard in the engine room space. Because of this observation and Mr. Marquez' report of colliding with the dock, Cogswell performed a video-taped test of spraying water at the hull to deck joint on the starboard hull side aft, and observed water entering the engine space through that unsealed joint. Cogswell also found salt had accumulated in the air intake filter assemblies for both engines. Given the facts of salt in the air intakes, unusual amounts of salt in the engine space with higher concentrations on the starboard side, and the obvious source of the salt water through the hull to deck joint separation on the starboard side arising from the Incident, Cogswell reported its findings to Mr. Marquez who then immediately made the Claim.

<u>Progressive's Hunter Survey</u>

Progressive responded by dispatching Missouri-based surveyor Hunter Consulting & Survey Services ("Hunter") to conduct a "cause of loss" investigation. Hunter attended the Boat at Cogswell on October 27, 2021, and issued a report dated November 2, 2021. Hunter noted Cogswell had concluded that because the engine air intakes were laden with salt, there was damage to the engines. So, Hunter elected to "evaluate the condition of the vessel in relation to the reported cause of loss." Hunter reported the pre-purchase survey of the Boat "was non-descriptive one way nor the other for hull damages and photographs included are unrevealing." We take that as Hunter recognizing that the PMS Survey reported no hull separation at the hull to deck joint on the starboard hull side aft at the time of Mr. Marquez' purchase in May 2021.

Hunter also reported damages "to the top cap immediately above the rub rail" which were allegedly "present for an extended time." Hunter labors to speculate his other physical damage findings as potentially "fore to aft" events in an apparent but feeble attempt to eliminate backing into a dock as a cause, and discoloration as indicating "stress" as opposed to acute fractures. Hunter finally concedes that he was "[p]hysically able to push the hull in and away by hand" on the starboard aft side, thereby essentially admitting the source and cause of the salt water intrusion into the engine space on the starboard side. Even then, Hunter further speculates, this time to the effect

procopio.com

12 Pags SCANNED Mon, 10 Jan 2022 19:44:55 GMT



the separation may be forward of the engine space, and forward of where water could possibly run up the side of the hull, apparently no matter the sea conditions. Finally, Hunter tries to attribute this obvious source of the intruding salt water to the construction method used back in 2006, but fails utterly to explain how that could be.

Hunter makes much of how there is no evidence of water leaks from any of the usual suspect sources in an engine space (through-hull fittings and the like), or any evidence of "swamping" of the engine space. Hunter also points to minor evidence of corrosion and potential leaking, of the sort that would not lead to internal engine damage. Hunter's point is an apparent attempt to substantiate the "wear and tear" exclusion in the Policy. However, all Hunter eventually accomplishes is to eliminate all but the hull separation at the rub rail on the starboard aft side as the source of the salt water intrusion into the engine space.

Hunter then turns his attention to Cogswell's findings. He, like Cogswell, found salt in the starboard engine air intakes. However, Hunter could bring himself only to call the confirming material "[g]ranules," or "crystalline substance", or "standing liquid", as if the material he found was anything other than salt. Regardless, salt in the air intake is salt ingested into the engine and therefore damage. The only remaining question is how much damage.

In the end, Hunter confoundingly concludes: (1) "the vessel does exhibit a cap to hull separation forward of the aft lifting point", (2) the separation was caused by a "sling at lift point" (apparent reference to hauling the vessel in a yard about which there has been no report?), (3) there is evidence of docking related contact aft, both starboard and port ("minor" in Hunter's view), (4) two areas of damage (port and starboard, or just starboard?) "appear to have occurred at differing timeframes" and are long-standing, and (5) the "initial point of contact (between what and what, and at what time?) appears aft of the area of cap to hull disbond". Hunter then goes into aggressive speculation that because the Boat seems to plane well in a manufacturer's marketing picture, it essentially must never have been operated in a mode where water could come in through the unquestioned separation of the hull at the aft starboard rub rail. Missourian Hunter's assertion demonstrates an astounding lack of knowledge about operation of a vessel in a situation of swells coming from both the south and the west, as is quite common in the Pacific Ocean off San Diego.

Hunter finishes with the observation that his "inspection did not verify any damages internally to the engines." He volunteers that he "cannot verify the presence of any damage whatsoever to the engines without a more substantial inspection and possible teardown." He recommends a "compression / leak-down test" and "[a]n oil test". So, Hunter is admitting he cannot say based on what evidence he does have that there is no damage to the engines.

Progressive's Denial of the Claim

Based on the Hunter Survey, we assume, Progressive denied the Claim by letter dated November 6, 2021, citing "no coverage". With respect, Progressive has absolutely no basis to reject coverage and deny the Claim.

Your Claim denial letter rejects coverage because (1) "our investigation reveals the claimed damages to the vessel and hull are not consistent with the reported events"; (2) "the damages to the engines are a result of delamination and structural breakdown"; (3) the Policy "does not cover

3

131051-00000001/5641520.2

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT



damages that are a result of wear and tear, mechanical failures, delamination nor structural breakdown"; and (4) the damages occurred before the Policy incepted.

<u>Christian & Company Marine Survey</u>

In light of the Hunter Survey and your denial of the Claim, Mr. Marquez commissioned Kells Christian to conduct a cause of loss and scope of damage survey (Christian Survey). Enclosed is a copy of the Christian Survey dated November 22, 2021.

Christian found a "significant salt build up in the starboard engine's air filter housing. The trail of salt is visible into the hose leading to the air intake side of the turbo charger." Christian also found evidence of corrosion on the engines, and in the engine space, more on the starboard than on the port.

Unlike Hunter, Christian finds the starboard hull/rubrail separation as a "likely" source of the salt water intrusion, when the Boat is underway. Like Hunter, however, Christian suggests an oil analysis and scope camera with leak down test be performed.

<u>Tests Performed</u>

Pursuant to the recommendations of both Hunter and Christian, your insured has arranged for both oil analysis and scope tests, at his own expense.

Enclosed are the results of the oil analysis. As you can see, both engines have excessive sodium in the oil, with the starboard engine having more.

As to the scope test, there is no written report, but we can provide you with the video, which Cogswell reads as showing internal corrosion which needs repair.

Given the substantial evidence of salt water intrusion that exists on observation and on the basis of the oil analysis and the scope test for which Mr. Marquez was forced to pay, there is no need, in our view, for further expensive compression and/or leak down testing.

<u>Demand for Coverage and Insurance Benefits</u>

There is no question there is separation at the starboard aft hull and rub rail juncture on the Boat. Your insured has informed you the separation occurred during the Incident after he purchased the Boat and before the engine failures occurred, and all the physical evidence supports that claim. Causation was supported by the Kozwell Survey and PMS Survey, and is now further supported by the Christian Survey. An insurance company may not ignore evidence which supports coverage and otherwise fail to evaluate a claim objectively.

Your expert Hunter speculates without any substantiation as to some possibilities why your insured's Claim may not be true. There is also no question based on video-taped testing that salt water can intrude through that separation area into the starboard engine space during vessel operation in open seas, even though Hunter inexplicably refused to view the video. There is salt in the engine air intakes which prove conclusively there is salt ingested into the engines, and therefore

131051-00000001/5641520.2

12 Pags SCANNED Mon, 10 Jan 2022 19:44:55 GMT



damage to the engines. You admit in your denial letter that there is "engine damage", and dispute only the cause. Even Hunter said he needed two tests before he could deny there is engine damage. Those two engine tests have been conducted and they support a conclusion that there is engine damage. Reliance upon Hunter's opinions does not demonstrate Progressive's objectivity because Hunter's opinions are themselves unreasonable.

There is coverage for this loss. The only issue is how Progressive in good faith is going to go about satisfying its obligations under the Policy to provide its insured the benefit of his bargain. The stancard of care would be for Prudential to authorize and pay for tear down of the engines in order to fully assess the scope of damages and repair and rebuild the engines. Cogswell recommends the tear down, and is qualified to accomplish that and the repairs. Hunter does not dispute that Cogswell's recommendation is consistent with the standard of care. On the other hand, the cost of tear-down and repair may exceed the value of the Boat under the Policy, given the potential obsolescence of the engines and some parts, and potential need to refit the Boat with new and different-sized engines. It cannot be determined what the cost will be to repair until the tear-down is completed.

On behalf of your insured, we demand that Progressive comply with its duty to investigate, and authorize and pay for Cogswell to tear down and determine the cost of repair to the engines resulting from the damage caused by the salt water intrusion into the engines emanating from the starboard aft hull and rubrail separation resulting from the Incident, and pay for any necessary repairs. Alternatively, Progressive can declare the Boat a total loss and issue a check to your insured for $92,000, per the agreed value coverage under the Policy.

We trust that Progressive will do the right thing here, reconsider its incorrect coverage position, and provide the insurance benefit for the risk it undertook in exchange for Mr. Marquez' payment of premium. Please advise your response within fifteen (15) days of the date of this letter. If we do not hear from you by then, we will assume Progressive has no interest in honoring its contractual obligation to Mr. Marquez, and will proceed accordingly pursuant to California law with which you are no doubt familiar.

Very truly yours,

Edward C. Walton

ECW

procopio.com

131051-00000001/5641520.2

12 Pags SCANNED Mon, 10 Jan 2022 19:44:55 GMT



| | WEAR | ABNORMAL |
| --- | --- | --- |
| | CONTAMINATION | ABNORMAL |
| OIL ANALYSIS REPORT | FLUID CONDITION | ATTENTION |

**Area**
# FRANK MARQUEZ [203428]
**Machine Id**
## VOLVO PENTA 2004006076 (S/N 2004006077)
**Component**
**Port Diesel Engine**
**Fluid**
## VOLVO ULTRA DIESEL ENGINE OIL 15W40 VDS-3 (13 LTR)

## RECOMMENDATION

We advise that you check for the source of the water/coolant. We recommend that you drain the oil and perform a filter service on this component if not already done. We recommend an early resample to monitor this condition. Please note that this is a corrected copy for laboratory data and diagnostic comment updates.

| Test | UOM | Method | Limit/Abn | Current | History1 | History2 |
| --- | --- | --- | --- | --- | --- | --- |
| Sample Number | | | | VPA035479 | --- | --- |
| Sample Date | | | | 02 Dec 2021 | -- | |
| Machine Age | hrs | | | 507 | -- | |
| Oil Age | hrs | | | 0 | | --- |
| Filter Age | hrs | | | 0 | --- | --- |
| Oil Changed | | | | Not Changd | --- | |
| Filter Changed | | | | Not Changd | --- | --- |
| Sample Status | | | | ABNORMAL | -- | |

## WEAR

The aluminum level is abnormal. All other component wear rates are normal.

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Iron | ppm | ASTM D5185m | >80 | 59 | --- | --- |
| Chromium | ppm | ASTM D5185m | >6 | 3 | --- | --- |
| Nickel | ppm | ASTM D5185m | >2 | 1 | --- | --- |
| Titanium | ppm | ASTM D5185m | >2 | 1 | --- | --- |
| Silver | ppm | ASTM D5185m | >2 | 0 | | |
| Aluminum | ppm | ASTM D5185m | >20 | 55 | --- | --- |
| Lead | ppm | ASTM D5185m | >95 | 2 | --- | --- |
| Copper | ppm | ASTM D5185m | >85 | 5 | --- | --- |
| Tin | ppm | ASTM D5185m | >9 | <1 | --- | --- |
| Vanadium | ppm | ASTM D5185m | | 0 | --- | --- |
| White Metal | scalar | *Visual | NONE | NONE | --- | --- |
| Yellow Metal | scalar | *Visual | NONE | NONE | --- | --- |

## CONTAMINATION

Sodium and/or potassium levels are high. There is a light concentration of water present in the oil. The high sodium (Na) level indicates the possible presence of salt water. Test for glycol is negative.

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Silicon | ppm | ASTM D5185m | >25 | 29 | --- | --- |
| Potassium | ppm | ASTM D5185m | >20 | 29 | --- | --- |
| Fuel | | WC Method | >4.0 | <1.0 | | |
| Water | % | ASTM D6304 | >0.1 | 0.254 | --- | --- |
| ppm Water | ppm | ASTM D6304 | >1000 | 2540 | --- | --- |
| Glycol | % | *ASTM D2982 | | NEG | --- | |
| Soot % | % | *ASTM D7686 | | 0.1 | | |
| Nitration | Abs/cm | *ASTM D7624 | >20 | 5.9 | --- | --- |
| Sulfation | Abs/1mm | *ASTM D7415 | >30 | 19.2 | | |
| Silt | scalar | *Visual | NONE | NONE | | --- |
| Debris | scalar | *Visual | NONE | NONE | --- | |
| Sand/Dirt | scalar | *Visual | NONE | NONE | --- | |
| Appearance | scalar | *Visual | NORML | NORML | | |
| Odor | scalar | *Visual | NORML | NORML | | |
| Emulsified Water | scalar | *Visual | >0.1 | NEG | | |

## FLUID CONDITION

The BN result indicates that there is suitable alkalinity remaining in the oil. The oil is no longer serviceable due to the presence of contaminants.

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Sodium | ppm | ASTM D5185m | | 859 | --- | |
| Boron | ppm | ASTM D5185m | 2.5 | 103 | | |
| Barium | ppm | ASTM D5185m | 0.0 | 0 | | |
| Molybdenum | ppm | ASTM D5185m | 0.7 | 52 | | |
| Manganese | ppm | ASTM D5185m | 0.0 | <1 | | |
| Magnesium | ppm | ASTM D5185m | 256 | 900 | | |
| Calcium | ppm | ASTM D5185m | 2057 | 1278 | | |
| Phosphorus | ppm | ASTM D5185m | 935 | 1000 | --- | |
| Zinc | ppm | ASTM D5185m | 1223 | 1067 | --- | --- |
| Sulfur | ppm | ASTM D5185m | 4079 | 2800 | --- | |
| Oxidation | Abs 1mm | *ASTM D7414 | >25 | 13.9 | | |
| Base Number (BN) | mg KOH/g | ASTM D2896 | 10 | 9.5 | --- | --- |
| Visc @ 100°C | cSt | ASTM D445 | 15.0 | 14.1 | --- | --- |

Contact/Location: Mitchell Cogswell - VP152133

Page 1 of 2

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT



| | | | |
|---|---|---|---|
|   | **Laboratory** : WearCheck USA - 501 Madison Ave., Cary, NC 27513 | | **Cogswell Marine & Motorsports, Inc** |
| | **Sample No.** : VPA035479   **Received** : 07 Dec 2021 | | 865 Stella Street |
| | **Lab Number** : 05416846   **Diagnosed** : 15 Dec 2021 | | CHULA VISTA, CA |
| | **Unique Number** : 9766034   **Diagnostician** : Doug Bogart | | USA 91911 |
| | **Test Package** : MOB 1 ( Additional Tests: Glycol, KF, TBN ) | | Contact: Mitchell Cogswell |

*To discuss this sample report, contact Customer Service at 1-800-237-1369.* — Cogswellmarinemotorsports@gmail.com

*\* - Denotes test methods that are outside of the ISO 17025 scope of accreditation* — T:

*Statements of conformity to specifications are based on the simple acceptance decision rule (JCGM 106:2012)* — F:

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT

# OIL ANALYSIS REPORT

**VOLVO PENTA**

## FRANK MARQUEZ  203428   VOLVO PENTA 2004006077 - STARBOARD DIESEL ENGINE

**Sample No:** VPA035474

**Oil Type:** VOLVO PENTA SAE 15W40

### SAMPLE INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Sample Number | | VPA035474 | --- | --- | --- |
| Sample Date | | 02 Dec 2021 | --- | --- | --- |
| Machine Hours | | 508 | --- | --- | --- |
| Oil Hours | | 50 | --- | --- | --- |
| Oil Changed | | Not Changd | --- | --- | --- |
| Sample Status | | SEVERE | --- | --- | --- |

### OIL CONDITION

| | | | | | |
|---|---|---|---|---|---|
| Visc @ 100°C | cSt | 13.6 | --- | --- | --- |
| Base Number (BN) | mg KOH/g | 9.1 | --- | --- | --- |
| Oxidation (PA) | % | 47 | --- | --- | --- |

### CONTAMINATION

| | | | | | |
|---|---|---|---|---|---|
| Water | % | 1.54 | --- | --- | --- |
| Soot % | % | 0 | --- | --- | --- |
| Nitration (PA) | % | 40 | --- | --- | --- |
| Sulfation (PA) | % | 48 | --- | --- | --- |
| Glycol | % | 0.0 | --- | --- | --- |
| Fuel | % | <1.0 | --- | --- | --- |
| Silicon | ppm | 15 | --- | --- | --- |
| Sodium | ppm | 84 | --- | --- | --- |
| Potassium | ppm | 4 | --- | --- | --- |

### WEAR METALS

| | | | | | |
|---|---|---|---|---|---|
| Iron | ppm | 14 | --- | --- | --- |
| Copper | ppm | 2 | --- | --- | --- |
| Lead | ppm | <1 | --- | --- | --- |
| Tin | ppm | <1 | --- | --- | --- |
| Aluminum | ppm | 28 | --- | --- | --- |
| Chromium | ppm | <1 | --- | --- | --- |
| Molybdenum | ppm | 33 | --- | --- | --- |
| Nickel | ppm | <1 | --- | --- | --- |
| Titanium | ppm | <1 | --- | --- | --- |
| Silver | ppm | 0 | --- | --- | --- |
| Manganese | ppm | <1 | --- | --- | --- |
| Vanadium | ppm | 0 | --- | --- | --- |

### ADDITIVES

| | | | | | |
|---|---|---|---|---|---|
| Calcium | ppm | 1406 | --- | --- | --- |
| Magnesium | ppm | 603 | --- | --- | --- |
| Zinc | ppm | 941 | --- | --- | --- |
| Phosphorus | ppm | 884 | --- | --- | --- |
| Barium | ppm | 0 | --- | --- | --- |
| Boron | ppm | 44 | --- | --- | --- |

**Cogswell Marine & Motorsports, Inc**
865 Stella Street
CHULA VISTA, CA
USA  91911
Contact: Mitchell Cogswell
Cogswellmarinemotorsports@gmail.com
T:
F:

## Diagnosis

We advise that you check for the source of the water/coolant. We recommend that you drain the oil and perform a filter service on this component if not already done. We recommend an early resample to monitor this condition. Please note that this is a corrected copy for laboratory data and diagnostic comment updates. All component wear rates are normal. Sodium and/or potassium levels are high. The high sodium (Na) level indicates the possible presence of salt water. There is a high concentration of water present in the oil. Test for glycol is negative. The BN result indicates that there is suitable alkalinity remaining in the oil. The oil is no longer serviceable due to the presence of contaminants.

| | |
|---|---|
| **Depot:** | VP152133 |
| **Unique No:** | 9766035 |
| **Signed:** | Doug Bogart |
| **Report Date:** | 15 Dec 2021 |

Report Id: VP152133 [WUSCAR] 05416847 (Generated: 12/15/2021 16:56:13)

Contact/Location: Mitchell Cogswell – VP152133

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT



**Howe Decl., Exhibit 4**
**Page 101**

# Christian & Company
### MARINE SURVEYORS

## SPECIAL REPORT

November 22, 2021

RE: Vessel:        2006 Striper 2901
    HIN:           GSSTC022B606
    Vessel Name:   *"Don Panchito"*
    Hailing port:  San Diego, CA

Dear Mr. Marquez:

Thank you for the above captioned assignment. You asked that we inspect the vessel and the engines and provide an opinion as to the cause of loss and scope of damage.

### History

You stated that you purchased the vessel in May 2021 in Long Beach, CA. You had a marine survey and mechanical survey performed. No significant problems were found on the mechanical survey. The engines are reportedly original with approximately 500 hours.

Since purchase you used the vessel with no issues. On September 28, 2021, with your wife and two grandchildren were aboard, you stated you were operating the vessel and the starboard stern collided with an adjacent dock.

On October 4, 2021 while operating the vessel both engines had alarms sound, the starboard indicating high temperature and the port indicating low oil. You stated that you shut the engines down and were towed into the dock by a commercial towing service.

On October 6 you drove the vessel from its normal slip to a boat ramp; you noticed high temperature on the engines' gauges, not up to the red area of the temperature gauge, but higher temperature than normal.

You delivered the vessel to Cogswell Marine as they had done prior work to the engines (since your purchase of the vessel).

### Cogswell Marine

We met with you and Mr. Pete Cogswell on November 18, 2021 at Cogswell Marine in Chula Vista, CA. Mr. Cogswell stated that they were responding to various complaints including that the engines were not functioning properly. Due to the limited access about the engines in this vessel, they decided to remove the engines to facilitate their assessment and repairs.

Upon removing the engines they noticed a high concentration of salt and corrosion, particularly to starboard in the engine space.

Marine Claims Assistance - Vessel Inspections
1276 Scott Street – San Diego, CA 92106
TEL 619.223.7380 800.944.4789 FAX 619.223.7390
office@themarinesurveyors.com - themarinesurveyors.com

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT

<table>
<tr><td>Mr. Frank Marquez<br>November 18, 2021</td><td>"Don Panchito"<br>2006 Striper 2901</td><td>Page 2 of 3<br>File # 21 - 30447</td></tr>
</table>

Cogswell Marine reported that they sprayed water at the hull to deck joint on the starboard hull side aft and water entered the engine room through the hull to deck joint. This is the area of impact with the dock. They stated that they have a video of this test.

They found salt accumulated in the air intake filter assemblies for both engines.

As a result of the apparent saltwater intrusion into the engines they recommend addressing possible damage. The repair options verbally discussed include rebuilding of the engines or replacement of the entire engine packages. Rebuilding of the engines will necessarily require using after market parts, as there are no Volvo Penta produced parts available for any "oversized" components. It is possible that upon disassembly of the engines they may not require oversized parts and Volvo Penta components might be available. This determination cannot be made until the engines are disassembled.

The long blocks are not currently available from Volvo. Thus any new engine option will necessarily require new engines, new wiring harnesses and new outdrives. This option is not financially feasible for this vessel.

### Vessel Inspection

We inspected the vessel on a trailer at Cogswell Marine in Chula Vista, CA on November 18, 2021. We confirmed the HIN listed above. The engines are Volvo Penta D4, the model and serial numbers are on file.

The air filters, housings and covers had been removed from both engines. There is significant salt build up in the starboard engine's air filter housing. The trail of salt is visible into the hose leading to the air intake side of the turbo charger.

There is significant corrosion on the outboard side of the starboard engine, including on the motor mount and salt and corrosion on electrical connections on the back of the alternator, located forward of the air filter.

There is minimal salt visible in the port engine's air filter housing. Pete Cogswell stated that there was more salt visible when the engine was removed. He stated that there has been rain and the port engine's air filter housing is facing the direction of the rain and the normal direction of winds.

We inspected the engine space. There is corrosion on components of the starboard engine's wiring harness including heavy corrosion on two solenoids. The starboard engine's positive starting cable terminal exhibits significantly more corrosion than the port engine's positive starting cable.

There is staining on the insulation on the engine hatch over the engines.

### Cause of Loss

Based on the physical evidence, salt water has entered the starboard engine and likely the port engine. The source of the salt water is unclear, but salt water entering the engine space, through the hull to deck joint, is a likely source. Water would splash up to this area and through apparently, when the vessel is underway.

**Marine Claims Assistance - Vessel Inspections**
**1276 Scott Street – San Diego, CA 92106**
**TEL 619.223.7380 800.944.4789 FAX 619.223.7390**
**office@themarinesurveyors.com - themarinesurveyors.com**

12 Pages SCANNED Mon, 10 Jan 2022 19:44:55 GMT

Mr. Frank Marquez                     *"Don Panchito"*                   Page 3 of 3
November 18, 2021                     2006 Striper 2901                  File # 21 - 30447

The ability/path of the water entering this hull to deck joint is possibly related to the
allision which you stated occurred on September 28, 2021.  You also stated there were
multiple photos of pre-existing damage in this area taken at the time of this survey and
there is clear and evident new damage from the incident.

### Scope of Damage

The scope of damage from the water intrusion into the engines is unclear and unknown.
No oil analysis has been performed to determine if sodium is present in the oil.  The
interior of the engines have not been inspected with a scope camera and no leak down
test has been performed to determine compression.

The mechanic believes that the engines need to be disassembled to inspect for damage
and to allow a thorough cleaning of the salt intrusion.  Cogswell Marine operates a
machine shop and they are capable of assessing and rebuilding the engines if
necessary or honing the cylinders and reassembling the engines with new small parts if
possible.

### Enclosures

1.  Photographs

Thank you for the opportunity to be of service.  Please contact the undersigned with any
questions or if there is anything that we can do to further assist with this claim.

Respectfully,

Kells Christian
Christian and Company
Marine Surveyors, Inc.

**Marine Claims Assistance  -  Vessel Inspections**
1276 Scott Street – San Diego, CA 92106
TEL 619.223.7380 800.944.4789 FAX 619.223.7390
office@themarinesurveyors.com - themarinesurveyors.com

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11   Francisco Marquez,                    | Case No.  TBD
12              Plaintiff,                  | **CONSENT TO REMOVAL**
13        v.
14   Progressive Direct Insurance Co.;
15   Carrie Rockwell; J. Michael
16   Hunter; Hunter Consulting &
     Survey Services, Inc.; and Does 1
17   to 50,
18              Defendants.
19
20
21
22
23
24
25
26
27
28

CONSENT TO REMOVAL

1    I am counsel for defendants J. Michael Hunter and Hunter

2    Consulting & Survey Services, Inc. in this matter. On behalf of my

3    clients, I consent to removal of San Diego Superior Court action no.

4    37-2022-00042849-CUBC-CTL to this Court by defendant

5    Progressive Direct Insurance Company.

6

7    January ___, 2023              NEMECEK COLE

8                                   By: _____

9                                   Kenny Brooks
                                    Attorney for defendants
10                                  J. Michael Hunter and Hunter
11                                  Consulting & Survey Services, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

CONSENT TO REMOVAL – 2

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PROGRESSIVE DIRECT INSURANCE CO.; CARRIE ROCKWELL;
J. MICHAEL HUNTER; HUNTER CONSULTING & SURVEY
SERVICES, INC.; and DOES 1 to 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FRANCISCO MARQUEZ

<div style="border:1px solid">

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/31/2022** at 02:43:00 PM

Clerk of the Superior Court
By Emily Schilawski,Deputy Clerk

</div>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior Court, Central<br>Division, 330 W. Broadway, San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2022-00042849-CU-BC-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Timothy Morgan, Esq., Haffner & Morgan, LLP 2333 1st. Ave. Ste. 200, San Diego, CA 92101, 619.541.8787

| DATE:<br>*(Fecha)* 11/03/2022 | Clerk, by<br>*(Secretario)* _E. Schilawski_ | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: PROGRESSIVE DIRECT INSURANCE CO.

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christian Haffner, Esq. (SBN 248962) Timothy Morgan, Esq. (SBN 280054)<br>Haffner & Morgan, LLP<br>2333 First Avenue, Suite 200, San Diego, CA 92101<br><br>TELEPHONE NO.: 619.541.8787    FAX NO.: 619.541.8795<br>ATTORNEY FOR *(Name):* Plaintiff Francisco Marquez | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**10/25/2022** at 11:32:13 AM<br><br>Clerk of the Superior Court<br>By Jimmy Siharath, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

CASE NAME:
Francisco Marquez v. Progressive Direct Insurance Co., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2022-00042849-CU-BC-CTL |
| | | | | JUDGE:   Judge Kenneth J Medel |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☑ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*  5
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 25, 2022
Timothy Morgan, Esq.
_____
(TYPE OR PRINT NAME)                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all**
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**Howe Declaration, Exhibit 6
Page 109**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7066 |

| PLAINTIFF(S) / PETITIONER(S): | FRANCISCO MARQUEZ |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): Progressive Direct Insurance Co et.al. |
|---|

MARQUEZ VS PROGRESSIVE DIRECT INSURANCE CO [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2022-00042849-CU-BC-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Kenneth J Medel                                    Department: C-66

## COMPLAINT/PETITION FILED: 10/25/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/19/2023 | 08:30 am | C-66 | Kenneth J Medel |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service**: The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

---

SDSC CIV-721 (Rev. 04-21)       **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE**       Page: 1
**(CIVIL)**

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

Page: 2



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2022-00042849-CU-BC-CTL        CASE TITLE: MARQUEZ vs Progressive Direct Insurance Co [IMAGED]

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
           **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
           **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_**
           **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Howe Declaration, Exhibit 6**
**Page 112**

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**Howe Declaration, Exhibit 6**
**Page 113**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

STREET ADDRESS:    330 West Broadway

MAILING ADDRESS:    330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME:    Central

PLAINTIFF(S):    FRANCISCO MARQUEZ

DEFENDANT(S): Progressive Direct Insurance Co et.al.

SHORT TITLE:    MARQUEZ VS PROGRESSIVE DIRECT INSURANCE CO [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2022-00042849-CU-BC-CTL |
|---|---|

Judge: Kenneth J Medel                           Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)          ☐ Non-binding private arbitration

☐ Mediation (private)                    ☐ Binding private arbitration

☐ Voluntary settlement conference (private)   ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)         ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____     Date: _____

_____     _____

Name of Plaintiff                               Name of Defendant

_____     _____

Signature                                    Signature

_____     _____

Name of Plaintiff's Attorney                    Name of Defendant's Attorney

_____     _____

Signature                                    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  10/26/2022                  _____

                                            JUDGE OF THE SUPERIOR COURT

| SDSC CIV-359 (Rev 12-10) | STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION | Page: 1 |
|---|---|---|